### THE CITY OF OLATHE v. T. L. HORNER.

1. NEW TRIAL — *Newly-Discovered Evidence.* In an application for a new trial upon the ground of newly-discovered evidence, it must be shown that such evidence is material to the issues to be tried, and that it could not have been produced at the trial by the exercise of reasonable diligence.

2. ———— *Cumulative Evidence.* Where evidence was introduced to establish a certain item in a claim, and the jury passed upon such evidence, newly-discovered evidence to establish such item is cumulative, and is usually insufficient to authorize a court to grant a new trial.

3. EVIDENCE, *Not Newly Discovered.* On the hearing of a petition for a new trial, evidence was offered to show that in the body of a deposition a witness was made to say the amount of a certain excavation was 888 square yards and 24 cubic feet, but in an exhibit attached to and made a part of his deposition it was correctly stated that the amount was 888 cubic yards and 24 cubic feet; the plaintiff had talked with the witness before the taking of the deposition, and had been informed that the amount of the excavation was 888 cubic yards and 24 cubic feet. *Held,* That evidence to establish that the statement of 888 square yards and 24 cubic feet was false, is not newly-discovered material evidence.

*Error from Johnson District Court.*

ACTION by *Horner* against *The City,* to recover for excavating a reservoir for water works. At the March Term, 1886, the plaintiff was granted a new trial. The defendant *City* brings the case to this court. The opinion states the material facts.

*Parker & Seaton,* for plaintiff in error.

*John T. Burris,* for defendant in error.

Opinion by HOLT, C.: The original action out of which this proceeding grows was brought by Horner, defendant in error, against the city of Olathe, to recover a balance due him for excavating a reservoir for water works. That action was tried at the March Term, 1885, before Hon. W. R. Wagstaff, judge, and a jury. A judgment was rendered for plaintiff, but not for the full amount claimed by him, and he made a motion for a new trial, which was overruled, on July 14, 1885. He filed his petition for a new trial, alleging as the grounds therefor newly-discovered evidence. This action was heard at the March term, 1886, before S. B., judge *pro tem.*

To fully understand what such newly-discovered evidence was, it will be necessary to refer to the deposition of one R. C. Pearson, used in the original trial of this action. After stating that he was a civil engineer, his deposition proceeds:

"I was employed as engineer in the actual construction of the water works of the city of Olathe, Kansas, from June 25th, 1883, until about August, 1883, and again from January 1st, 1884, to about May 10th, 1884, and as such engineer I made measurements for excavating said water works; and for more specific mention of said measurements see paper marked 'Exhibit A,' hereto attached."

Exhibit "A" is as follows:

*"The City of Olathe, to Mr. T. L. Horner—Dr.:*

| TO WORK ON THE WATER WORKS. | Cu. Yds. | Cu. Ft. |
|---|---|---|
| 1. To stripping under banks | 1,244 | 12 |
| 2. To core pit | 629 | 17 |
| 3. To extra excavation on north end | 237 | 1 |
| 4. To creek-bed, clearing and filling | 888 | 24 |

City of Olathe v. Horner.

| | | |
|---|---:|---:|
| 5. To extra south end............................... | 1,111 | 3 |
| 6. To around filter................................ | 201 | 18 |
| 7. To under filter, Pyke's estimate.................. | 760 | .. |
| 8. To extra west side.............................. | 77 | 21 |
| | | |
| 9. By Pyke's estimate............................. | 5,150 | 25 |
| | 1,952 | .. |
| | | |
| | 3,198 | 25 |

Total at 24 cents per cu. yd., $767.58."

Pearson, in speaking about item number 4 in the exhibit, was made to say in his deposition:

"I have never given any estimate of this said item to the council; I am familiar with the ground of the water works reservoir, and the general outline of the creek-bed through it. In my best judgment, about 888 square yards and 24 cubic feet of excavation were done in the creek-bed through the reservoir."

The alleged newly-discovered evidence is that Pearson would testify that he meant 888 cubic yards and 24 cubic feet, instead of 888 square yards and 24 cubic feet. The briefs of both parties deal quite extensively with the question of surprise, but as it is not alleged in the petition for a new trial as one of the grounds upon which relief is sought, we shall not attempt to discuss that question, as it is not before us in the record. The only question that we shall consider is, whether the testimony introduced on the hearing of this petition establishes that any evidence material for the plaintiff has been newly discovered, which he could not with reasonable diligence have discovered and produced at the original trial, or that he could not with reasonable diligence have discovered and produced at the hearing of the motion for a new trial. In the first place, it is a very doubtful question whether the evidence claimed to have been newly discovered was material in this case. It is that the witness Pearson would testify that he meant in his deposition to have said that the amount of the excavation of the creek-bed was 888 cubic yards, instead of 888 square yards. The measurement of an excavation by square yards is something unheard of; the measurement must necessarily be cubic, and the statement that there was 888 square yards of dirt ex-

cavated is an absurdity; square measure has relation only to the length and breadth, while cubic measure has reference to the length, breadth, and thickness; the one applies to surfaces, and the other relates to solids.  It is further stated that the excavation amounted to 888 square yards and 24 cubic feet; such a measurement as that is an impossibility; the fact that 24 cubic feet is a part of the measurement would seem of itself to be sufficient to notify plaintiff that this deposition was intended to have reference to the measurement of solids; but we are not left in doubt in regard to this matter, for he affixes an exhibit to his deposition, which is made a part thereof, and item 4 of that exhibit is as follows: "Creek-bed, clearing and filling 888 cu. yds. 24 cu. ft.;" and adding the eight items of the exhibit, the total is 5,150 cubic yards and 25 cubic feet.  That amount is obtained by including the 888 cubic yards and 24 cubic feet, and that total multiplied by the price per cubic yard was the basis in part to establish the amount due.  It seems improbable that a jury could have been misled by the error in the deposition, which is clearly a clerical one.

But is this evidence newly discovered?   The plaintiff contends that it is, and says that Pearson himself would testify that if he made the statement 888 square yards, it was false. The question to be decided in another trial would be, not whether the deposition of Pearson was false, but, what was the amount of the excavation ?   Did the plaintiff know before the trial what that measurement was, or could he have known it by the exercise of reasonable diligence ?.  It is in evidence by the plaintiff himself, that some time before the original trial, the plaintiff and Pearson went to Dr. Pyke's house, in Kansas City, and on this trial he testified as follows:

"Q. Did you not in that conversation discuss while at Dr. Pyke's house, some of you, some of you three, this very question of the amount of excavation in the creek-bed through the reservoir ?   A. Yes, sir; that was discussed."

He also testified that he knew that Pearson had gone to Texas, and he gave his address to the attorney for the city,

who in turn gave him notice that he would take depositions at the place where he said Pearson lived. He did not attend the examination of Pearson when his deposition was taken, for the reason, as he states, "I was satisfied in my mind he would not give anything but what was correct." Pearson also testified concerning that discussion at the house of Dr. Pyke in the presence of the plaintiff.:

"Q. I will ask you whether or not there was any discussion at that time concerning the amount of excavation in the creek-bed through the reservoir? A. My recollection of it is, that it was the only thing we did discuss, and the only thing that was discussed at all.

"Q. Was that prior to this case in the district court? A. It was.

"Q. I will ask you to state to the court whether or not at that time you and Pyke together, or in conjunction with Mr. Horner, talked that matter over and reached any figures, or came to any agreement about the number of yards of the excavation there was in the creek-bed. A. Well, it had all slipped my mind until I heard him speaking about it awhile ago. My recollection of it is that we did determine on that 888 and 24 feet.

"Q. 888 cubic yards? A. 888 cubic yards and 24 cubic feet."

This question of the amount of the excavation of the creek-bed was inquired into in the original action. Dr. Pyke, one Keighton and the plaintiff himself testified concerning the amount. The plaintiff himself says in his application for a new trial:

"Q. State whether or not Mr. Keighton gave any estimate as a witness to that jury as to the amount of excavation in the creek-bed? A. I think he did."

The evidence called newly discovered is additional evidence upon the same point controverted before, and simply adds to what has been testified. It is cumulative in its character, and is not sufficient to justify the granting of a new trial. (*Baughman v. Penn*, 33 Kas. 504.)

We do not believe from the testimony of the plaintiff himself and the record that comes here that there was any newly-

The State, *ex rel.*, v. Comm'rs of Reno Co.

discovered evidence, which was material to the cause, which could not have been discovered before the trial by the exercise of proper and reasonable diligence on the part of the plaintiff. While it is with great hesitation that we set aside an order granting a new trial, yet we feel justified in doing so this time. One of the reasons usually given for upholding an order of the lower court granting a new trial, is eliminated from this case. The judge of the court, when this case was originally tried, was not the judge who presided at the time the application was made for a new trial; as a matter of fact, the trial court had overruled a motion for a new trial. Having heard the witnesses and having seen all of the incidents and circumstances of the trial, it can fairly be presumed that the judge was satisfied that the verdict was supported by the evidence. A new trial might give the parties another opportunity, and possibly a fairer one, for the determination of their controversy, yet, in the interest of putting an end to litigation, it appears to us that the judgment in the original action should be allowed to stand.

We recommend that the judgment of the lower court be reversed.

By the Court: It is so ordered.

All the Justices concurring.