## PERRY PHILLIPS v. VICK REITZ.

1. **FRAUDULENT SALES;** *Good Faith.* To support a sale of personal property, where there is no change of possession, as against a creditor or subsequent purchaser, proof of good faith is as essential as proof of a sufficient consideration.

2. ———— *Possession of Vendor.* A continuance of possession by the vendor is evidence of a want of good faith, as well as of a want of sufficient consideration. It does not raise a presumption of law that the sale is fraudulent and void, but simply one of fact, which may be overborne by other testimony. Like the possession of recently-stolen property, it casts upon the party the duty of explaining the possession, and may, if unexplained, become conclusive evidence against the sale.

3. ———— *Intent of Vendor; Knowledge of Vendee.* Knowledge of facts sufficient to excite the suspicions of a prudent man, and put him upon inquiry, is, as a general proposition, equivalent to knowledge of the ultimate fact.

4. ———— If a party knows of the fraudulent intent of a vendor, and buys with that knowledge, he is not a *bona fide* purchaser, for he is knowingly helping the vendor to accomplish the fraud and do the wrong.

### *Error from Johnson District Court.*

REPLEVIN, brought by *Perry Phillips*, for the undivided one-half interest in nine head of horses, one phaeton, two buggies, harnesses, etc. *Phillips* claimed to be the owner, and entitled to the possession of the property, and alleged that it had been wrongfully taken and was wrongfully detained by *Vick Reitz.* Reitz answered, that the property in question was the property of one I. N. Phillips, and not the property of plaintiff; that defendant was sheriff of Johnson county, and as such sheriff he had received and held a writ of execution to him duly issued and delivered, upon a judgment duly recovered in the Johnson county district court by B. A. Feineman & Co. as plaintiffs against said I. N. Phillips as defendant, for $160.35 and costs, April 15th 1874; that by virtue of said writ of execution he (*Reitz*) as sheriff had levied upon said property as the property

of said I. N. Phillips; that he found said property in the possession and under the control of said I. N. Phillips, and that he (the sheriff) had taken the same, and now held and retained the possession thereof as such sheriff, and by virtue of said writ of execution. Trial at the August Term 1874. The evidence showed that I. N. Phillips and one Thomas Muir had been partners, carrying on the livery business in the city of Olathe for a long time; that the horses, carriages, etc., levied on by sheriff *Reitz* had been owned by said Phillips & Muir, and used in their said business; that said I. N. Phillips, in March 1874, was largely indebted, and suits were pending against him; that his homestead, and all his real property except the undivided half of the livery-stable lot was mortgaged; that *Perry Phillips*, the plaintiff, was his brother; that *Perry* resided on a farm ten miles distant from Olathe; that on the 4th of April 1874 said I. N. Phillips and one McKeever went to the residence of the plaintiff, and there said I. N. Phillips sold his interest in the livery stable and stock to the plaintiff for $1,200, for which sum the plaintiff executed his promissory note, which was immediately indorsed to said McKeever as collateral security for the payment of the purchase-money of a farm sold by said McKeever to said I. N. Phillips, upon which farm McKeever held a mortgage given to secure said purchase-money; that the livery stock and property was all at Olathe at the time, and the plaintiff did not go to see or take possession of it; that I. N. Phillips and Muir continued the livery business as partners, but one witness for plaintiff testified that plaintiff had employed him (the witness) to take charge of the stock and attend to the plaintiff's interest in the livery business. It also appeared that Feineman & Co. had recovered a judgment against I. N. Phillips, April 15th 1874, and an execution thereon had been issued, as alleged in *Reitz's* answer; that *Reitz* had levied said execution upon the property in controversy on the 20th of April; that thereupon I. N. P. dispatched a messenger for the plaintiff, who immediately came to Olathe, and then (after said levy) said I. N. P. went

with the plaintiff to the livery stable, and undertook to make formal delivery of the property to plaintiff, but they were notified by Muir that the sheriff had levied upon the property and had left it in his (Muir's) care, and that no delivery or change of possession could be made; that after said levy Muir and I. N. Phillips had a settlement between themselves, which included partnership accounts in the livery business down to the day of the settlement. It also appeared that *Perry Phillips* had obtained possession of the property, at the commencement of the action, and that at the time of the trial a part of the stock, and two of the carriages were in the possession of I. N. Phillips. The material part of the instructions is copied into the opinion, *infra*. The jury found for the defendant, and assessed the value of the property at $732.50. New trial refused, and judgment on the verdict in favor of defendant *Reitz* for a return of the property, etc. *Phillips* brings the case here on error.

*John T. Burris*, and *John T. Little*, for plaintiff:

1. The plaintiff contends that the evidence in this case proves clearly that there was an actual *bona fide* sale of the property in controversy, and that there was no fraud nor collusion on the part of plaintiff. He was a farmer, living some ten miles distant from his brother, and plaintiff knew nothing about his brother's condition. He bought the property in good faith, and gave his note therefor, which passed into innocent hands.

2. The jury were misled by the instructions given by the court in reference to a change of the possession. It was error to instruct the jury that if they found from the evidence that plaintiff had purchased the property for a fair price, and paid his money therefor, yet, if there was no change of possession at the time of the levy that this was evidence of fraud : 15 Cal. 503; 14 Cal. 384; 4 Kent's Com. 500. The evidence shows that long before the levy was made, plaintiff had taken possession and had employed hands to take charge of the stable and property. No removal of the property was neces-

sary. It was such property as was not to be removed — a livery stable and stock. A delivery of the possession without a change of possession is sufficient: 5 Cal. 226; 14 Cal. 384; 19 Cal. 393; 25 Cal. 545. See also, 26 Cal. 316; 28 Cal. 13.

3. The court also erred in giving the instruction, that notwithstanding the vendee paid full value for the property, yet, if the circumstances which ought to have excited the suspicions of a prudent man, existed, (although the vendee knew nothing of the circumstances,) he is not a *bona fide* purchaser, and not entitled to protection as such.

The opinion of the court was delivered by

BREWER, J.: This was an action of replevin, and the question was as to the validity of a sale claimed to have been made by one I. N. Phillips to plaintiff. Defendant was sheriff of Johnson county, and under an execution against I. N. Phillips levied on the property. The property consisted of livery stock in the city of Olathe. Plaintiff was a farmer living some miles off in the country. The sale was made at the farm of plaintiff. He was not from the time of the sale to the time of the levy in Olathe, and I. N. Phillips remained in the actual charge, though, as was claimed, as the agent of plaintiff. The errors alleged are in the giving of instructions. The two propositions to which specific objection are made are —

1st, "The unexplained possession by the vendor, after the sale, is conclusive evidence of fraud."

2d, "The actual participation by the vendee in the vendor's fraudulent intent, is not necessary to avoid the sale. It is enough if he knew of such intent, or of facts sufficient to excite the suspicions of a prudent man, and put him on inquiry."

That good faith is as essential to support a sale like the one before us, as a sufficient consideration, will not be questioned. *Twyne's Case*, 3 Coke, 80; 1 Smith's Leading Cases, 42; *Baldwin v. Peet*, 22 Texas, 780; *Chandler v. Van Roeder*, 24 How. (U. S.) 224; *Pullevin v. Newberry's Adm'r*, 41 Ala.

168. And that a continuance of possession is evidence of a want of good faith, as well as a want of sufficient consideration, is settled by the statute. Gen. Stat., p. 504, § 3. That possession may be retained, and still there be a valid sale, is also clear, and so in unmistakable language the court instructed the jury. And this instruction, as to the effect of an unexplained possession, must be considered in reference to and as qualified by the other instructions. There has been a vast amount of controversy as to the effect of a retained possession upon an alleged sale, when challenged by a creditor, or subsequent purchaser. It is all based upon the idea that possession follows title, and that where there is a transfer of title there should be a change of possession. In some courts it has been held, that a failure to change possession is so inconsistent with a transfer of title that it creates a presumption of law against the alleged sale. This presumption of law, no evidence of the good faith of the parties, and of the payment of full consideration, can overthrow. In others, such failure to change possession is merely evidence against a sale, which may be explained. The presumption is one of fact; and like all presumptions of fact open to explanation by other testimony. It is like the presumption of guilt which flows from the possession of recently-stolen property. It casts upon the possessor the duty of explanation. (See for a full discussion of this question and the authorities thereon, *Twyne's Case*, and notes thereon, in 1 Smith's Leading Cases, Hare & Wallace's notes, pp. 47, and following.) Our statute has accepted the latter construction, and provides in the section cited, that "Every sale * * * unaccompanied by an actual and continued change of possession, shall be deemed to be void, * * * until it is shown that such sale was made in good faith, and upon sufficient consideration." In other words, proof of actual good faith, and payment of sufficient consideration, does away with the presumption which flows from a retained possession — shows that such possession does not imply a retained title, or a secret trust — in short, explains the possession. Until it is so explained, it is evidence against

the sale; and unless so explained, it is conclusive evidence. To that extent, and only to that extent, do we understand the instructions of the court, taken as a whole, to have gone; and in that is no error. (See upon this, *Ayres v. Moore*, 2 Stewart (Ala.) 336; *Peck v. Laud*, 2 Kelly (Georgia) 1; *Flemming v. Townsend*, 6 Georgia, 104; *Beers v. Dawson*, 8 Georgia, 557; *Robinson's Ex'rs v. Robards*, 15 Mo. 459.)

As to the second objection, the court distinctly charged that the vendee must be a party to the fraud to avoid the sale, and then, in another instruction, apparently in explanation of what was necessary to make him a party to the fraud, charged that it was enough if he knew of the vendor's fraudulent intent, or of facts sufficient to put him upon inquiry. Is this error? We think not. Knowledge of facts sufficient to excite the suspicions of a prudent man, and put him upon inquiry, is, as a general proposition, equivalent to knowledge of the ultimate fact. *Garaby v. Bayley*, 25 Texas, (Suppt.) 294; *Pitney v. Leonard*, 1 Paige Ch. 461. And if the vendee knew of the fraudulent intent of the vendor, and bought with that knowledge, he can scarcely claim to be a *bona fide* purchaser, for he was knowingly helping the vendor to accomplish the fraud and do the wrong.

There appearing no error in these rulings, the judgment must be affirmed.

All the Justices concurring.