THE ECLIPSE WIND MILL CO. v. THORSON.

1. **Principal and Agent**: UNDISCLOSED PRINCIPAL: PAYMENT TO AGENT.
If the purchaser of property does not know that he is dealing with an agent of the owner, and has not good reason to know it, he is justified in treating the agent as the owner, and payment of the purchase price to him will be a defense to an action by the owner for the amount.

*Appeal from Winneshiek Circuit Court.*

MONDAY, JUNE 11.

ACTION to recover the balance due upon the sale of a wind mill. The mill was sold to the defendant by the firm of Blackmarr & Son, who were agents of the plaintiff. Afterwards the defendant was garnished upon an execution against Blackmarr & Son. The defendant being ignorant of the agency, as he alleges, and supposing that he was indebted for the mill to Blackmarr & Son, answered as garnishee that he was so indebted, and judgment was rendered against him upon his answer. He now pleads those facts by way of defense. Trial by jury. Judgment for defendant. Plaintiff appeals.

*C. P. Brown*, for appellant.

*L. Bulis*, for appellee.

ADAMS, J.—I. The plaintiff asked the court to give an instruction in the following words: "It is not essential to the plaintiff's right of recovery that the defendant actually had knowledge of the plaintiff's title to the property. It is sufficient if it be shown that the defendant had before garnishment the means of informing himself in regard to the same, and if you find from the evidence that the defendant had such means and neglected to use the same, then the defendant would be liable to the plaintiff in this action." This instruction the court refused to give, and gave the following: "If you find that Blackmarr & Son in negotiating the sale of the mill to the defendant did not disclose the fact that they were acting as agents for the

Eclipse Wind Mill Co., and if you find that the defendant did not have good reason to know such fact, then if Blackmarr & Son have been paid for the mill the plaintiff cannot recover." In giving the latter instruction, and in refusing to give the former, it is claimed by appellant that the Circuit Court erred.

The evidence shows that a bill was sent to and received by the defendant, which is in these words:

"Beloit, Wis., Jan. 5, 1876.

"Paul Thorson bought of Eclipse Wind Mill Co., one ten foot mill, one hundred feet tin galvanized pipe, one tower.................................. $107.50

"Paul Thorson.

"Pay the account to M. V. Blackmarr, who will remit it with other collections to us.

"C. B. Salmon, *Treasurer.*"

The appellant claims that the defendant should have discovered from said bill that the mill was bought of the plaintiff; that he had the means of making the discovery, and if he did not use the means it was his own fault, and that the jury should have been instructed that if defendant had the means of knowing the fact in regard to the ownership of the mill, the plaintiff was entitled to recover. The court was unwilling to go that far, and instructed the jury in substance that if defendant did not know who owned the property when it was sold to him, his liability would depend upon whether he had good reason to know it, and we are of the opinion that the court was correct. We cannot say that the defendant ought to be held to pay for the property twice if he neither knew nor had good reason to know the plaintiff in the transaction. In one sense a purchaser may be said always to have the means of knowing whether he is purchasing of an agent or not if the person negotiating the trade is willing to disclose the fact. He may have the means of knowing and not know that he has the means nor be able to discover it in the exercise of reasonable diligence.

II. The appellant claims that the verdict is contrary to the

evidence. It is claimed that if the defendant had in his possession the bill which disclosed the vendor, he did have good reason to know who the vendor was, and that the jury should have found for the plaintiff even under the instruction that was given. The defendant, however, testifies that he could not read English, and if such was the fact we think it could not be declared as a matter of law that he had good reason to know the contents of the bill. If he could read no part of it he would have no intimation from the bill itself as to what it contained. If he received the paper in such a way that he should have supposed that it pertained to his business, ordinary prudence would doubtless have dictated that he should secure a translation. But then for that purpose he should have a reasonable time. He should have time to obtain a translator. The jury declared by their verdict that he did not have good reason to know, notwithstanding the receipt of the bill, who the vendor of the mill was, and we do not think that under the evidence we should be justified in setting the verdict aside.

AFFIRMED.