BRETTUN CRAPSTER v. STEPHEN D. WILLIAMS, *et al.*

1. REPLEVIN; *Pleadings; Reply to Reply and Evidence thereon with General Finding.* Where the pleadings in an action of replevin consisted of a petition by the plaintiff, an answer by the defendant, a reply by the plaintiff, and a rejoinder or reply to the reply by the defendant, and the parties at the trial admitted that all the facts stated in all the pleadings, except those stated in the defendant's reply, were true, and then voluntarily and without objection submitted the case to the court upon the truth or falsity of the allegations set forth in the defendant's reply, and the defendant without objection introduced evidence to prove the facts alleged in his reply, and the plaintiff introduced evidence to disprove the same, and the court upon the admissions and the evidence thus introduced found generally in favor of the defendant and against the plaintiff, and rendered judgment accordingly, *held*, that the supreme court will not reverse said judgment merely because the statutes of Kansas do not provide for or recognize any such thing as a rejoinder or a reply to a reply.

2. CHATTEL MORTGAGE *to Secure Debt already Secured by Mortgage on Real Estate; Possession of Personal Property Mortgaged; Fraud.* Where it is shown by admissions and evidence that the parties to a certain chattel mortgage executed and received the same for the purpose of placing the mortgaged property beyond the reach of certain creditors of the mortgagor, and the debt for which the mortgage was given was already amply secured by a mortgage on real estate, and the chattel mortgagor con-

tinued to hold the possession of the personal property mortgaged, *held,* that a pretty strong case of fraud as against the parties to said chattel mortgage and in favor of said creditors is made out.

### *Error from Cowley District Court.*

REPLEVIN, brought by *Crapster* against *Williams.* Trial at the May Term, 1877, of the district court. Judgment for defendant. New trial refused, and *Crapster* brings the case here. The facts are sufficiently stated in the opinion.

*Webb & Webb,* for plaintiff in error.

*Hackney & McDonald,* for defendants in error:

1. The pleadings of the defendants in the court below were fully sufficient to support its finding and judgment. (70 Ill. 41.) The question of their sufficiency being raised for the first time here, will not be regarded favorably. (*Moody v. Arthur,* 16 Kas. 419.)

2. The finding and judgment of the district court were correct, and are amply sustained by the evidence, which shows that $700 worth of real estate, and $960 worth of personal property, were mortgaged by the Jacksons to Crapster, to secure the payment of a legal debt of only $240, and that said chattel property was so mortgaged for the express purpose of placing it beyond the reach of the defendants Shales and Harmon, and that Crapster, through his agent, Alexander, had full notice of such purpose. Crapster was therefore not a mortgagee in good faith, and entitled to protection, but on the contrary, was a party to the fraudulent intent of the Jacksons. (*Strohm v. Hayes,* 70 Ill. 41; *Phillips v. Reitz,* 16 Kas. 396.)

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin. The pleadings consisted of a petition by the plaintiff, an answer by the defendant, a reply by the plaintiff, and a rejoinder or reply to the reply by the defendant. At the trial in the district court, the parties admitted that all the facts alleged in

all the pleadings, except those alleged in the reply to the reply, were true. The defendant then introduced evidence to prove the facts alleged in his reply, and the plaintiff introduced evidence to disprove the same. The court, upon the admissions and upon the evidence thus introduced, found generally in favor of the defendant and against the plaintiff, and rendered judgment accordingly. The plaintiff then moved the court for a new trial, upon the ground "that said judgment was contrary to law and contrary to the evidence." The court overruled the motion, and the plaintiff now brings the case to this court.

The plaintiff raises two questions in this court. He claims: 1st, "The answer does not state facts sufficient to constitute a defense;" 2d, "The judgment is not supported by sufficient evidence."

I. The answer contained two defenses: 1. A general denial. 2. That the property in controversy was the property of Adaline Jackson; that the defendant found it in her possession, and, as constable, levied upon it, and held it by virtue of an execution issued by a justice of the peace against the property of said Adaline Jackson, on a judgment rendered by such justice in favor of Kendrick Harmon and Lewis C. Shales and against said Adaline Jackson. Either of these defenses was unquestionably sufficient.

II. Does the evidence support the "judgment" and the finding of the court below? We think it does, and certainly we cannot say that it does not. It must be remembered, that the parties voluntarily submitted their case to the court below upon the truth or falsity of the allegations set forth in the reply of the defendant to the reply of the plaintiff. That this was a novel proceeding can make no difference now. Both parties consented to it, both parties proposed it, and neither party at any time objected to it. Although under the code, or other statutes, there can be no such thing in replevin as a rejoinder, or as a reply to a reply, yet, as both parties in the court below treated such reply as legal and valid, and submitted their case to the court below upon the truth or

falsity of its allegations, we shall also treat such reply as legal and valid. We shall treat the allegations contained in said reply the same as though they were contained in the defendant's answer, and in response to proper allegations in the plaintiff's petition. It appears from the petition, answer, and plaintiff's reply, that the property in controversy once belonged to said Adaline Jackson; that she mortgaged it to the plaintiff Brettun Crapster, to secure the payment of a certain note for $300; that she still retained the possession of the property; and that, while the property was so in her possession, the defendant as constable levied upon it and took it into his possession as aforesaid. The defendant's reply, after denying all the allegations of the plaintiff's reply, alleged as follows:

"Defendant avers that the said chattel mortgage, in said reply of plaintiff mentioned, is fraudulent and void, and was executed by the said Adaline Jackson for the sole purpose of defrauding, hindering and delaying her creditors, and to prevent her said creditors Lewis C. Shales and Kendrick Harmon, in defendant's answer mentioned, from collecting the amount of their said claim against her by law; that she was not indebted to the plaintiff in the sum of $300, nor in any other sum; that the said sum of $300, in plaintiff's reply mentioned, was the debt of one Andrew Jackson to the plaintiff, and arose from $200 loaned by the plaintiff to the said Andrew Jackson, for the purpose of entering in the U. S. land office the said Andrew Jackson's farm, the N. E. ¼ of section 9, township 30, south, of range 4, east, in said county, and $100 for expense of entering, and interest on the $200 for one year in advance; that the said loan was made under the agreement between the said Andrew Jackson and the plaintiff that said plaintiff should take a mortgage on the said land for his only security for said loan; that the said Andrew Jackson, with his wife Adaline Jackson, did execute to the said plaintiff such mortgage on said land, to secure the payment of the said $300 according to said agreement; that said land is worth $600, and is ample security for the said $300; that said property described in said chattel mortgage was the sole property of the said Adaline Jackson; and that the plaintiff well knew all the above-recited facts at the time the said chattel mortgage was executed."

We think the evidence proved the allegations of the defendant's reply. The testimony of Andrew Jackson himself would tend to prove the following facts: Jackson borrowed $230, not to exceed $240, of the plaintiff, and gave his note therefor payable in one year for $300, the excess over $230 or $240 being for interest. With this money Jackson entered his land at the United States land office, and then gave a mortgage on the land to secure the payment of said note. The land was worth at the time about $700. Nothing was said at the time the money was borrowed about giving any other security. Afterward, Jackson and his wife, said Adaline Jackson, ascertained that said Shales and Harmon were likely to take the personal property of the Jacksons to pay said claim of Shales and Harmon, and the Jacksons desired to do something to prevent it. They consulted with the agent of the plaintiff concerning the matter, and such agent, whom we shall designate as A., advised them to mortgage it to the plaintiff. A portion of Jackson's testimony is as follows: "My wife was present, and A. and I then talked about the Shales and Harmon matter, and about how we could keep them from taking the personal property to pay their judgment. A. advised that we mortgage it to the plaintiff. I asked him if Shales and Harmon could then take it, and he said, 'No.' He said that as the land was an upland claim, plaintiff ought to have more security. We concluded to mortgage it, and A. drew up the chattel mortgage I have been speaking of, and we signed it." This chattel mortgage was given as additional security for the payment of said $300 promissory note. It included the property in controversy; and included in the aggregate, according to Jackson's testimony, about $960 worth of personal property. This, we think, makes out a pretty strong case of fraud against the Jacksons and against the plaintiff, and in favor of said Shales and Harmon, who were then the creditors of Mrs. Jackson. And as the court below found generally in favor of the defendant and against the plaintiff, it makes no difference now that said agent A. and said Jackson "both stated under oath

8—21 KAS.

that the chattel mortgage was executed in good faith and with no fraudulent intent." The court believed the *facts* as *stated in detail* by Jackson. Nor can it make any difference that the judgment on the claim of Shales and Harmon had not yet been rendered when said. chattel mortgage was executed. The claim existed, and it is about as great a fraud to attempt to defeat a just claim not in judgment, as it is to defeat one evidenced by a judgment. As strongly supporting the doctrine of this case, we would refer to *Phillips v. Reitz*, 16 Kas. 396; and *Strohm v. Hayes*, 70 Ill. 41.

The judgment of the court below will be affirmed.

All the Justices concurring.