## THE TRIPP & MOORE BOOT AND SHOE COMPANY v. JOSEPH MARTIN.

1. AGENT, Dealing with as Owner—Liability to Principal.   If one deals *bona fide* with an agent as owner, without knowledge of his agency, and has no good reason to know of such agency, he is justified in treating the agent as the owner, and the payment of the purchase-price to him with a preëxisting debt will be a defense to an action by the owner for the value of the goods and merchandise.

2. ACCOUNT—*Verification.*   Under the provisions of § 108 of the civil code, an account, to be duly verified by affidavit, must be sworn to positively.   (*Atchison v. Bartholow,* 4 Kas. 124.)

3. PRACTICE — *Evidence — Surprise — New Trial.* If a plaintiff finds himself unprepared to meet the defendant's evidence, he should ask at the trial for time to meet it. Generally this will be allowed upon such terms as may seem just; but if this is not allowed, he always has it in his power to dismiss his action without prejudice, which will leave him at liberty to sue again for the same cause of action. He cannot, as a general rule, be permitted to take the chances upon the evidence to which he does not object, and, when judgment is rendered against him, obtain a new trial, simply because he was surprised at the evidence presented.

*Error from Wyandotte District Court.*

THE opinion contains a sufficient statement of the case.

*Hayward & Green,* for plaintiff in error.

*Thos. W. Heatley,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action by the Tripp & Moore Boot and Shoe Company against Joseph Martin upon an account for boots and shoes, amounting to $791.47 and interest. The answer of the defendant set up: First, a general denial; second, payment; third, payment by E. M. Sharp, deceased; fourth, a counterclaim for $400. A jury was waived, and trial had before the court, on October 20, 1887. A general finding was made for the defendant, and judgment rendered in his favor for costs. The plaintiff excepted, and brings the case here.

A preliminary question is presented upon the record. On the 26th of November, 1887, the motion for a new trial was overruled, and the plaintiff was given sixty days to make a case for this court. The defendant was given twenty days thereafter to suggest amendments, and the case was ordered to be settled upon five days' notice. The sixty days would have expired January 26, 1888. On the 21st of January, 1888, the plaintiff was given until the 10th of February, 1888, to make and serve its case. This was done on the 1st day of February, 1888. The attorney for the defendant ac-

cepted service of the case, expressly stating, however, "No. waiver." The case was settled and signed on the 15th day of February, 1888. Under the order of the 26th of November, 1887, the defendant had twenty days after the service of the case on the 1st day of February, 1888, in which to suggest amendments. The case-made was signed and settled before that time had expired. Within the decisions of *M. K. & T. Rly. Co. v. City of Fort Scott,* 15 Kas. 435; *Weeks v. Medler,* 18 id. 425, and *M. K. & T. Rly. Co. v. Roach,* 18 id. 592, it is doubtful whether the case-made can be considered.

"It nowhere appears that the judge considered any amendments, or that any were suggested, or that counsel had none to suggest, or that they had waived in any manner their right to suggest them." (*Railway v. Roach,* 18 Kas. 592.)

Even if we consider the case in this court upon its merits, we cannot reverse the judgment rendered. Where there is a general finding and judgment of the court, the judgment must stand if there is evidence to support it. (*Major v. Major,* 2 Kas. 337; *Ulrich v. Ulrich,* 8 id. 402; *Railway Co. v. Kunkel,* 17 id. 145; *Bentley v. Brown,* 37 id. 14; *Peacock v. Boyle,* 41 id. 492.)

It appears from the evidence presented in the trial court, that the Tripp & Moore Boot and Shoe Company sold boots and shoes at Kansas City, Mo., through one E. M. Sharp, who acted as its agent from the summer of 1884 and until his death, in 1885. The defendant testified that he bought the boots and shoes the 1st day of April, 1885, of E. M. Sharp, and denied that he ever received any bill or statement of the boots and shoes from the plaintiff until more than a year after he had bought and paid for them. He also testified, among other things, as follows:

"Q. Did you know one E. M. Sharp during his life-time? A. Yes.

"Q. Where was he doing business? A. In Kansas City, Mo., and in this city.

"Q. What was his business? A. He was in the boot and

shoe business, as commission broker; an agent in various ways, handling boots and shoes.

"Q. Have you examined this statement here [handing witness paper] of the plaintiff in this case, and marked 'Exhibit A,' and dated October 1, 1885? A. Yes, sir.

"Q. State to the court whether or not you ever purchased that bill of goods from the plaintiff in this case, the Tripp & Moore Boot and Shoe Company. A. I did not.

"Q. State whether or not at any time you received from the plaintiff in this action any statement of any kind for any bill of goods—that one or any other. A. I never did.

"Q. When was the first time that you had any knowledge that they made any claim against you; what time of year was it? A. I can't give the exact date; it was in the fore part of the summer or spring of this year, 1887.

"Q. Where have you been living during the time since April, 1885? A. In this consolidated city.

"Q. And in Armourdale? A. Yes, sir.

"Q. State whether or not you ever purchased any goods directly or indirectly from the plaintiff in this case. A. I never did.

"Q. You spoke a minute ago about Mr. Sharp doing a commission business over in Kansas City, Missouri, there; what do you know about it? A. Well, I was employed by him, and was in his room and business during the time — most of the time.

"Q. What sort of business did he carry on; tell the court what he did in regard to buying and selling—that is what I want to get at without leading you? A. Well, his plan, as near as I can state to the court, was to buy goods wherever he could find anything that he thought was a bargain, take the agency or buy the goods outright and sell on order the same as any other commission man—the wholesale boot and shoe houses.

"Q. He had a store in Kansas City? A. Yes, sir.

"Q. State how the goods were received there when he bought them in the east from parties—when they were received? A. The goods were billed to E. M. Sharp from Tripp & Moore, and Chicago houses, and two or three eastern houses. I can't, without a little time, think of all the places that he got goods from. He bought goods sometimes in Kansas City from W. W. Kendall—it was then—and bought goods from Victor B. Buck.

"Q. When he bought them, where were the goods put? A. They were put in this store-room, 405 Delaware street.

"Q. When the goods were there, what did he do in the way of selling them? A. Sold them the same as any other wholesale jobbing house did; billed the goods and collected the pay for them.

"Q. State what the fact is in regard to that, whether E. M. Sharp, doing business there, became indebted to you in any way. A. Yes.

"Q. In what sum? A. Well, I can't state exactly; between $800 and a $1,000. Mr. Sharp kept the books and had the books in his possession when he died, and I have never been able to get hold of them.

"Q. Did Mr. Sharp pay you then in any way? A. Mr. Sharp paid me by selling me a bill of goods.

"Q. Now, then, what time of the year was that? A. In April—the 1st of April, 1885.

"Q. Now, then, tell the circumstances under which they were sold and delivered to you. A. Mr. Sharp's health failed, and he was not able to run the business; the business was getting down. He called me to his bedside one day; he was able to write and keep his books, but not able to go down town. To balance accounts, he sold me about $800 worth of boots and shoes.

"Q. Well, what did he do with them? A. Delivered them to me.

"Q. What did you do with them? A. I took them to Armourdale, and opened a retail boot and shoe shop down there.

"Q. Were those the only goods you ever got from anybody in Kansas City that year; was it, or not? A. No, sir; I bought goods from Kendall, and I bought goods from Thomas.

"Q. I will ask you, did you ever buy in that year any goods from the plaintiff in this action? A. No, sir."

"If the purchaser of property does not know that he is dealing with an agent of the owner, and has not good reason to know it, he is justified in treating the agent as the owner, and payment of the purchase-price to him will be a defense to an action by the owner for the amount." (*Windmill Co. v. Thorson*, 46 Iowa, 181; *Peel v. Shepherd*, 58 Ga. 365; *Pratt v. Collins*, 20 Hun, 126; *Frame v. Coal Co.*, 97 Pa. St. 309.)

*1. Agent, dealing with as owner —liability to principal.*

It is familiar law that if one deal *bona fide* with an agent as owner, without knowledge of his agency, he may set off

49—45 KAS.

any claim he may have against the agent in answer to the demand of the principal. (Story on Agency, §§ 420, 421; 2 Kent's Comm. 632, where numerous authorities are collected. See, also, Benj. on Sales, § 1103, p. 959.)

It is claimed, however, that if the defendant did not know that the Tripp & Moore Boot and Shoe Company owned the boots and shoes which Sharp sold to the defendant, he had good reason to know it, and therefore that the defendant could not pay for the property by writing off a debt due to him from Sharp. (*Phillips v. Reitz,* 16 Kas. 396; *Kurtz v. Miller,* 26 id. 314; *Gollober v. Martin,* 33 id. 252; *Henderson v. Creamer,* 39 id. 679.)

If the trial court had found that the purchase by Sharp from his principal was fraudulent, or if the court had found that the defendant had good reason to know that Sharp did not own the boots and shoes sold to him, then the plaintiff would have been entitled to recover; but the general finding is against the plaintiff, and we cannot say that it is wholly unsupported by the evidence. As there was evidence to sustain the finding and judgment of the trial court in every essential particular, we cannot now reverse the judgment simply because it does not seem to be sustained by a preponderance of the evidence. (*Railway Co. v. Salmon,* 14 Kas. 512.)

It is also claimed that the trial court committed error in not striking the answer from the files and rendering judgment upon the petition or account sued on. It is said that the account was verified by affidavit, and, as the answer was not verified, there was no issue to try. (Civil Code, § 108.) An examination of the record shows that the petition was not duly verified within the provisions of the statute. It was not sworn to positively. (*Atchison v. Bartholow,* 4 Kas. 124.)

2. Account— verification.

Finally, it is claimed that the plaintiff was surprised by the evidence offered by the defendant, tending to show that he did not know that in buying the boots and shoes he was dealing with an agent of the plaintiff, and had no good reason to know it. It is also said in this connection that there is a variance between the evidence and the answer. The plaintiff

C. I. & K. Rld. Co. v. Townsdin.

did not object or except to any of the evidence offered by the defendant. If it had done so, the court might have permitted the answer to be amended upon such terms as were just. If the plaintiff was surprised at the evidence offered, it could have asked for a continuance, or could have dismissed its action and afterward commenced a new one to recover the amount claimed. It saw fit to take its chances with the court upon the evidence as it was presented. It must therefore be held to abide the result. (3 Grah. & W. New Tr. 364–368.)

3. Practice— evidence— surprise— new trial.

The judgment of the district court will be affirmed.

All the Justices concurring.