## H. W. LEWIS *et al.* v. C. S. HUGHS.

INSOLVENT DEBTOR — *Purchase by Debtor — Good Faith.* Where a creditor purchases property of his debtor, who is insolvent, and who, he knows, is attempting to dispose of his property to defraud his creditors, and pays for the same with a note and account long overdue, he must act in good faith, and pay or allow his debtor adequate prices or fair value for the property purchased.

*Error from Harper District Court.*

THE opinion states the case.

*J. P. Grove*, and *Shepard, Cherry & Shepard*, for plaintiffs in error:

The testimony of T. B. Marsh, taken by deposition and read in evidence, is, in all its material parts, hearsay and incompetent, and should have been excluded by the court from the consideration of the jury; but it was read in evidence over the objection of defendants. We do not know on what

theory the court allowed Marsh to testify as it did, of what Hughs told the witness Marsh, which was not only hearsay, and prejudicial to the defendants below in that way, but it allowed Hughs to manufacture evidence for himself. It is so well settled by the primary principles of evidence that no one may be permitted to do this, that no citation of authorities on that point seems necessary, or even proper.

The instructions are improper, and misleading in their general scope, as a whole. The jury are told, in effect, that it made no difference if Singer, by bribe or otherwise, succeeded in getting Griffin away from the property long enough to make a bill of sale of it to Hughs, and Hughs knew that Singer was committing that fraud, still, if Singer actually owed Hughs the note, and Hughs took the property in payment or security of that debt, that the sale would be valid, and, following as a necessary conclusion, Hughs would have the right to recover—even if Hughs was cognizant of or even assisted in the perpetration of the fraud. Good faith is always necessary to a valid sale. If Hughs knew of the attachment of February 1, or knew enough facts to put a reasonably prudent man on his inqury, he was bound by that knowledge, and could not defeat the attachment by trick or otherwise. It is only innocent purchasers who are protected. Waples, Attach., pp. 175, 176, 177, 490; *Rogers v. Gilmore*, 61 Cal. 309; *Barmon v. Clippert*, 68 Mich. 277; 26 Am. Dec. 411; Drake, Attach. (15th ed.,) §§ 255a, 256, 258, 291, 292a, 292b, and cases cited under said sections.

The jury should have been so instructed, and further, should have been directed as to the means to employ in determining those matters. But not one word is said in reference to the effect of the knowledge or even fraud of Hughs, except inferentially to say that it would be proper, if thereby he succeeded in his design.

*Crooker & Noftzger*, for defendant in error:

The deposition of T. B. Marsh was properly read in evidence. The statements of the witness were as to a material

fact, testified to by him; that is, that the note which Hughs testified was part of the consideration for which the mules in controversy were obtained from the Singers was the property of Hughs long before the commencement of this action. This testimony was intended to meet the intimations of plaintiffs in error upon the trial that the indebtedness of the Singers to Hughs was not *bona fide*, but was hatched up for the occasion. The testimony of Marsh showed that about two months prior to the time this action was brought Hughs had in his posses-sion the note of the Singers which he testified was a part of the consideration of this trade. The testimony of Marsh upon this point was not hearsay, it being testimony as to the fact of the possession of the note by Hughs. Some of the statements made by the witness in regard to what Hughs said at the time witness saw this note in his possession might, standing by themselves, be held to be hearsay, but taken in connection with the other statements of the witness, if hearsay at all, it was of such a mild character as not to be prejudicial to the plaintiffs in error.

The instructions present a clear exposition of the law in the case. The criticisms thereof by counsel for plaintiffs in error are largely frivolous and a mere play upon words. In-struction 2 was not misleading. The jury are told that Hughs had a right to take this property in payment of a debt due him from the Singers, even though the Singers might then have been seeking to dispose of their property to defraud their creditors. That is the law. Hughs was not assisting the Singers to defraud their creditors by purchasing the prop-erty in payment of an indebtedness due him. He was pro-tecting himself and assisting the Singers in a lawful act, that is, the payment of a just debt, and this instruction, construed with reference to the other instructions and the evidence, was proper and in no wise misleading. In instruction number 3 the jury are plainly told that if the sale of the property in controversy was made for the purpose of defrauding, hinder-ing or delaying the creditors of the Singers, and that Hughs had knowledge that the Singers were seeking to dispose of

their property for such purpose, and the purchase of the property in controversy was not made in good faith and for a valuable consideration upon the part of Hughs, their verdict should be in favor of plaintiffs in error. This certainly is the law, clearly, plainly and concisely given, and requires no argument or citation of authorities to sustain it. The same can be said in regard to the other instructions. The jury were plainly told that the defendant in error must prove his right to the property by a preponderance of testimony. They were also told the effect of a levy of an attachment, the rights acquired by a levy of an attachment, and what was necessary to constitute a valid and complete levy of a writ of attachment, and in all other respects the issues presented by the pleadings and proof were fully and succinctly stated to the jury.

The opinion of the court was delivered by

HORTON, C. J.: F. B. & S. S. Singer, (a firm composed of F. B. Singer and S. S. Singer, father and son, as the sole members,) together with several others as sureties, were indebted to H. W. Lewis in the sum of $4,130, with interest at the rate of 12 per cent. per annum from October 3, 1888, and on November 21, 1888, Lewis began his action against all of the parties so indebted to him for the recovery of the money and interest. On the 30th day of January, 1889, he caused an order of attachment to issue to the sheriff of Harper county, commanding him to levy upon the property of S. S. Singer to an amount sufficient to satisfy his claim, and costs. This order was issued, directed and delivered to the sheriff of Harper county for execution, and by him received on the 30th day of January. The sheriff returned that he executed the writ on the 1st day of February, 1889, by levying upon the property of S. S. Singer, including the six head of mules in dispute. The action of Lewis against F. B. & S. S. Singer and others was prosecuted to judgment, in favor of Lewis and against all of the defendants, for the amount claimed, and judgment was rendered sustaining the attachment. C. S. Hughs claims the

property in controversy by purchase from F. B. & S. S. Singer, February 2, 1889, for value, in good faith. His further claim is, that there was then no valid attachment on the property and that the return of the sheriff is false. Hughs brought his action in replevin against H. W. Lewis, John S. Gardner, the sheriff, and F. P. Privett, the deputy sheriff, on February 7, 1889, to recover possession of the six mules and $100 damages. At the June term, 1889, the action was tried before the court with a jury, which returned a verdict in favor of Hughs, on which the court rendered judgment against H. W. Lewis *et al.* for the return of the mules, or, in case a return could not be had, then for $600, with interest and costs. H. W. Lewis and the other defendants excepted, and bring the case here.

Upon the trial, Lewis, the defendant below, attempted to make it appear to the court and jury that at the time Hughs purchased the mules the Singers were engaged in attempting to fraudulently dispose of their property, and that Hughs was privy thereto. He also offered evidence tending to show that a levy of the attachment was properly made upon the mules and possession taken thereof; that there was a fraudulent conspiracy existing between the Singers and Hughs to defeat the attachment, and by stealth and fraud get the property out of the hands of the law. It appears from the evidence that on the 2d day of February, 1889, Hughs was sick; that Simon Singer went to Freeport, about six miles, and brought Hughs to his place to write deeds. Hughs claims that at this time the Singers were indebted to him upon a note and account, amounting to about $550; that he purchased the mules and a horse called "Monarch" for $550, and gave the note and account in payment. Upon the trial, the court instructed the jury as follows:

"The plaintiff in this case claims to have obtained a title to the property in question by reason of a certain sale made on the 2d day of February, 1889, from S. S. Singer and F. B. Singer. It is claimed by the plaintiff that he transferred or traded certain notes and accounts which he then held against the Singers for the property in question. If you find from

the evidence in this case that the Singers were indebted to the plaintiff at that time, in the amount stated by the plaintiff, and that he took this property in satisfaction of such debt, or to secure the payment of the same, then I instruct you that this would be a valid sale, even though you find at such time that the Singers were indebted in large sums to other creditors, and even though you further find that at such time, to wit, the 2d day of February, they were then seeking to dispose of their property to defraud their creditors, and that the plaintiff in this case had knowledge of such fact."

This instruction, upon the facts disclosed, was erroneous. It appears from the evidence that the defendant gave a note and account, amounting to $550, for the mules and the horse "Monarch," on the 7th of February, 1889, a few days after the alleged purchase. Hughs, in his affidavit for an order of replevin, stated that the mules alone were worth $775. The jury in their verdict valued the mules on the 7th of February, 1889, at $600. If Hughs, with full knowledge of the attempt of the Singers to defraud their creditors, took advantage thereof and obtained the property in dispute at less than its value, he cannot be called a purchaser in good faith. He does not pretend that he took the property as a pledge or as security.

"As a general rule, in the absence of special statutory restrictions, a debtor in failing circumstances, acting in good faith, may lawfully prefer one creditor, even to the total exclusion of all the others. He may also, in like good faith, in a reasonable business manner, use his property by mortgage, pledge, or otherwise, in raising money to pay such creditor." *Cuendet v. Lahmer*, 16 Kas. 527; *Bishop v. Jones*, 28 id. 680; *Tootle v. Coldwell*, 30 id. 125.

Therefore the Singers had the right, if their property was not lawfully seized by the attachment, to sell the same for the purpose of paying *bona fide* indebtedness, even though they were insolvent; but a creditor in purchasing property of his debtor who is insolvent, and who, he knows, is attempting to dispose of his property to defraud other creditors, must act in the utmost good faith, and must pay or allow adequate prices

for the property purchased. *Phillips v. Reitz*, 16 Kas. 396; *McDonald v. Gaunt*, 30 id. 693; *Gollober v. Martin*, 33 id. 252; *Bush v. Collins*, 35 id. 535.

The instruction should have stated that the purchase was made by Hughs in good faith and for an adequate or fair consideration; that is, he must have paid fair value for the property obtained. Under the instructions, the jury were. permitted to find the sale valid if Hughs took the mules and horse from the Singers to satisfy his debt, whether he paid value or not. "Good faith and value, or adequate prices" should have been included in the instruction. The erroneous instruction was not cured by the subsequent instructions given in the case. The next instruction to the one referred to used the words "valuable consideration" improperly for "value." The petition did not allege the value of the property in controversy, but upon the trial witnesses testified thereto. Perhaps, taking the whole case together, this of itself was not material error, but as the case must go back for a new trial, the petition ought to be amended. *Ward v. Masterson*, 10 Kas. 77; *Knox v. Noble*, 25 id. 449.

T. B. Marsh, a witness, was permitted to testify to certain statements of Hughs which were hearsay. This was incompetent evidence. It should have been excluded from the consideration of the jury, when the defendants below objected.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.