CHARLES SCHRAM, *as Sheriff of Butler County*, v. H. H. TAYLOR.

1. FRAUDULENT CONVEYANCE—*Bona Fide Debt.* A creditor who obtains a transfer to himself of all the property of his insolvent debtor, not for the honest purpose of securing payment of a debt, but to aid the debtor in covering up his property and defeating other creditors, will not be protected, nor will the transfer be upheld by merely showing that his debt was *bona fide.*

2. CREDITOR, *not Guilty of Fraud.* A creditor who in good faith takes the property of his debtor, at a fair valuation, in payment of an honest debt, is not guilty of defrauding anyone; and the fact that the payment of his debt in this manner may absorb the entire property of the debtor is no evidence of bad faith on the part of the creditor, and does not necessarily taint the transaction with fraud.

35 — 51 KAS.

3. INSTRUCTION—*Error.* In such a case it should appear that the property transferred bears a just proportion to the amount of the debt sought to be paid by the transfer; and the failure of the trial court to include this principle in an instruction upon such a transfer is held to be material error.

*Error from Butler District Court.*

REPLEVIN by *Taylor* against *Schram*, as sheriff. At the October term, 1889, the plaintiff had judgment. The defendant comes to this court. The opinion states the facts.

*Redden & Schumacher*, for plaintiff in error:

The court erred in giving the seventh instruction, as follows:

"That when a person purchases goods with the knowledge that his vendor intends by the sale to defraud his creditors, or to hinder or delay them in the collection of their debts, such purchaser will not be affected, if he takes the goods in good faith, in payment of an honest debt. A creditor violates no rule of law when he takes payment of his debt, though he knows that other creditors are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims."

The fore part of the above instruction is inconsistent with itself, therefore misleading, in this: It states that a person who buys goods knowing that his vendor sells them to defraud his creditors yet may take them in good faith. We say this is an impossibility. If A. knows that B. sells him something to defraud B.'s creditors, A. cannot take that property in good faith; in other words, no man can act in good faith who, knowingly, assists another to commit a fraud. If the plaintiff knew that J. C. Taylor sold the sheep to defraud his creditors, then it was impossible for the plaintiff to consistently claim that he took the sheep in good faith; and if he was a party to the fraud, it was immaterial whether he paid a valuable consideration or not for the property. *Davis v. McCarthy*, 40 Kas. 19; *Dolan v. Van Demark*, 35 id. 309; 3 Wait, Act. & Def. 449, 469, and cases there cited.

This instruction is erroneous in another respect: It states that if the purchaser took the property in good faith, in payment of an honest debt, the sale will stand, though the property was sold with the intention to defraud the creditors of the vendor. This proposition should have another qualification attached to it, namely: "Provided the purchaser had neither actual nor constructive knowledge of the fraud." A further qualification was necessary to make it correctly state the law, namely: "That the value of the goods sold should bear a just proportion to the amount of the debt sought to be paid by the transfer." See *Smith v. Boyer*, 45 N. W. Rep. 265; *Davis v. McCarthy*, 40 Kas. 19; *Crumbaugh v. Kugler*, 2 Ohio St. 374; *Stumbaugh v. Anderson*, 46 Kas. 541.

*Hamilton & Leydig*, and *J. K. Cubbison*, for defendant in error:

Counsel for plaintiff in error insist very strongly that the court erred in its seventh instruction. There is a marked distinction, under the decisions of our state, between a purchaser of property with a knowledge of the fraudulent intent of the vendor, and one who, with knowledge of the fraudulent intent of the vendor, simply takes property in payment of a just debt. A purchaser with the knowledge that his vendor intended to hinder, delay or defraud his creditors has no right to speculate at the expense of the creditors of his fraudulent vendor. There is no occasion or just reason for him to purchase under such circumstances, and the simple fact of his doing so makes him a party to his vendor's fraud, and will avoid the sale. And the rights of innocent creditors are so carefully guarded, that even knowledge of such facts as would, upon inquiry, lead to the discovery of his vendor's fraudulent intentions is sufficient to avoid the sale.

On the other hand, a creditor has the right to purchase, for a man always has the right to protect himself, and the creditor has a right to purchase property sufficient to pay his debts, provided his debts are just, and he purchases only enough property to pay his debt, and he purchases at a fair

value. Although his vendor may have an intention to hinder, delay and defraud his creditors, and although the creditor may know the intentions of his fraudulent vendor, still he has a right to purchase, and it becomes a question of fact for the jury, under all the facts and circumstances of the case, whether the creditor acted in good faith or not. In this case the fairness of the price and the amount of the mortgage indebtedness on the sheep, the correctness and honesty of the debt which J. C. Taylor owed his son, H. H. Taylor, were questions of fact, and were all properly submitted to the jury. See *Farlin v. Sook*, 30 Kas. 401; *Arn v. Hoerseman*, 26 id. 413; *Davis v. McCarthy*, 40 id. 19; *National Bank v. Ridenour*, 46 id. 707, 718.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action brought by H. H. Taylor to recover from Charles Schram, sheriff of Butler county, the possession of 1,210 head of sheep and 300 lambs, all of the alleged value of $5,065. The sheep were seized by the sheriff as the property of J. C. Taylor, the father of the plaintiff below, to satisfy a judgment against the father. It appears that, after J. C. Taylor had become financially embarrassed, he sold, or claimed to sell and transfer, the sheep to his son, for a consideration of about $2,400, which was in the form of an incumbrance upon the sheep; and it is stated that the agreement was, that the son should pay and discharge the debt and incumbrance which stood against the sheep. When the sheep had been turned over to the son, the father had little, if any, property remaining to satisfy a large indebtedness that existed against him. The cause was tried with a jury, and some of the testimony submitted tended to show that the father was indebted to the son, and the sheep were given to him in part payment of the indebtedness. It was claimed that the father owed the son $225 for work and labor; a one-fifth interest in a payment of $500 which had been made by the mother of J. C. Taylor to his five children, which, with interest for 10 years, amounted to about $200;

also, a legacy of $255 left to H. H. Taylor by his grandmother, together with interest thereon; and also $375 upon a wheat crop raised by H. H. Taylor and his father while the former was a minor. Counsel for plaintiff in error challenges the validity of this indebtedness, and further insists that there was no *bona fide* sale of the sheep, nor anything paid upon them, but that they were simply taken subject to a mortgage, much less in amount than the value of the sheep; that there was no actual change of possession, and that the sale and transfer were made with the intention to hinder, delay and defraud the creditors of J. C. Taylor; and further, that H. H. Taylor was aware of such purpose, and assisted in carrying it out.

On the other hand, H. H. Taylor contends that the transfer was *bona fide;* that there was a complete and continued change of possession from the time of sale, and that the consideration paid by him for the sheep was the full value of the same. It is shown that he paid $1,100 of the indebtedness existing against the sheep and gave his personal note and mortgage to secure the balance that was due upon them. H. H. Taylor now contends that he tried the case upon the theory that his father had paid to him what was due prior to the purchase of the sheep, and that the sole consideration of the purchase was the assumption and agreement to pay the amount of the mortgage indebtedness which was then a lien upon them. The plaintiff in error tried the case upon the theory that H. H. Taylor pretended to be a creditor of his father, and had taken the sheep on his pretended claim of indebtedness, but that the value of the sheep greatly exceeded the amount of the indebtedness and incumbrance, and the transfer was in bad faith, and that the value of the sheep did not bear a just proportion to the amount of the indebtedness.

There was testimony that justified the court in instructing upon both theories, and the principal error complained of is an instruction given to the jury which reads as follows:

"That when a person purchases goods with a knowledge that his vendor intends by the sale to defraud his creditors,

or hinder or delay them in the collection of their debts, such purchaser will not be affected if he takes the goods in good faith in payment of his honest debt. A creditor violates no rule of law when he takes payment of his debt, though he knows that the other creditors are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims."

One criticism upon the instruction is, that it justified the jury in holding that the creditor or purchaser who knowingly assists a debtor to commit a fraud upon his creditors will be protected and the transaction upheld. The language of the instruction is confused, inconsistent, and to some extent misleading. A purchaser who joins with a vendor in an attempt to defraud his creditors cannot be said to act in good 2. Creditor, not faith. However, a purchaser who in good faith guilty of fraud. takes the property of his debtor, at a fair valuation, in payment of his honest debt, is not guilty of fraud against anyone. The fact that the payment of his claim in this manner may absorb the entire property of the debtor is no evidence of bad faith, and does not necessarily taint the transaction with fraud. The most serious objection to this 3. Instruction— instruction, however, is the omission to state that error. the goods taken should bear a just proportion to the amount of the debt sought to be paid by the transaction. This court has repeatedly sustained transactions whereby a *bona fide* creditor obtains a preference over other creditors by taking the property or security on the same, but it has never been held that he may take property greatly in excess of the amount of the debt. So it has been said that "a debtor in failing circumstances may prefer one creditor to another, although that creditor should be his wife, and he may in good faith transfer his property at a fair price to her in payment of her *bona fide* claim." (*National Bank v. Croco*, 46 Kas. 631.) In the case of *National Bank v. Ridenour*, 46 Kas. 721, cited by defendant in error, the right of a creditor to a preference was sustained, providing the transfer was made in good faith, to pay a *bona fide* debt, and the value of the prop-

erty taken was not in excess of the debt which was actually due. Many cases are cited, which, it is stated, show

"That where the conveyance to a creditor having a *bona fide* claim is in excess of the actual debt, or is given to favor the .debtor. or merely to cover up the property from other creditors, or to prevent a fair sale of the property, then the transaction, sale or conveyance so fraudulently made to the creditor having the honest debt is void, at least as to the creditors not preferred." (See, also, *Lewis v. Hughs,* 49 Kas. 23; *Dodson v. Cooper,* 50 id. 680.)

1. Fraudulent conveyance— bona fide debt.

Counsel for Taylor recognize the same principle, where they state in their brief that

"A creditor has the right to purchase, for a man always has the right to protect himself; and the creditor has a right to purchase property sufficient to pay his debt, provided his debt is just and he only purchases enough property to pay his debt, and he purchases at a fair value."

In this case, it was claimed that the value of the sheep greatly exceeded the incumbrances against them, and there was a dispute in regard to the amount of the mortgages which constituted liens upon the sheep. On one side, it was claimed that the mortgages amounted to about $2,300, and that the sheep were not, at the time of the transfer, worth more than $2 per head. The plaintiff in error insists, however, that the liens upon the sheep did not amount to $2,000, and that the sheep were actually worth nearly double the amount of the incumbrances. Whether the sheep, which constituted about all the property of the insolvent debtor, were taken at a fair value, was a material question in the case, and a proper instruction with regard to it was important. If it had been specially found that the amount of the liens and the value of the sheep were substantially the same, it might be said that no prejudice had resulted from the misdirection of the jury; but no special findings were made, and we are unable to find anything in the record to cure the vice of the instruction. In the general verdict returned in favor of Taylor, it is found that the sheep were of the value of ·

$3,200 at the commencement of the action, but what their value was at the time of the transfer cannot be stated with any degree of certainty.

The sufficiency of the evidence is presented by a demurrer which was filed, but we cannot say that there was error in overruling it. If the case had been properly submitted to the jury, with a result similar to what was obtained, we would feel compelled to say that all questions respecting the honesty of the debt, the fairness of the price and the good faith of Taylor had been settled by the jury, and that there was testimony enough to sustain their verdict.

None of the other questions suggested by plaintiff in error are deemed to be material; but for the error already referred to the judgment of the district court will be reversed, and the cause remanded for another trial.

All the Justices concurring.