NOAH PATTERSON AND CHARLES GARBER, *Partners as Patterson & Garber*, v. ELIAS TEMPLE AND CHARLES MARSHALL, *Partners as Temple & Marshall*.

No. 204.

FRAUD — *one in possession of facts to put him on inquiry is chargeable with.* Where one is in possession of sufficient facts to put a reasonably prudent man upon inquiry, and such inquiry would lead to a knowledge of the fraud, such party is chargeable with fraud.

Error from Jewell District Court. Hon. Cyrus Heren, Judge. Opinion filed June 16, 1897. *Affirmed.*

*R. W. Turner*, for plaintiffs in error.

*T. S. Fitzpatrick*, and *Hamilton & Harmon*, for defendants in error.

McElroy, J.  This was an action in replevin com-
menced in the court below by Temple & Marshall,
against Patterson & Garber.  Patterson & Garber
were engaged in the mercantile business at Esbon, and
Temple & Marshall were millers at Clifton, operating
the Clifton Roller Mills.  Samuel Garber, a brother
of Garber of the firm of Patterson & Garber, was a
resident of Red Cloud, Neb., and, on August 17, 1894,
Samuel Garber, for the purpose of defrauding Temple
& Marshall, wrote and mailed a letter on the printed
letter-heads of the Farmers and Merchants Banking
Company of Red Cloud, as follows:

SILAS GARBER, Prest.                    W. S. GARBER, Cashier.
GEO. O. YEISER, V.-Prest.               P. A. BEACHY, Ass't Cashier.
FARMERS AND MERCHANTS BANKING CO.,
CAPITAL PAID UP, $60,000.
*Stockholders' Liability, $100,000.*

*Clifton Roller Mills, Clifton, Kansas:*

GENTLEMEN,—I will buy from you two cars of flour if
I can do so on the terms mentioned below.  One car of
six hundred sacks high patent, at $1.70 F. O. B. Esbon,
Kan.  One car of six hundred sacks second grade, at
$1.50 F. O. B. Esbon, Kan., on thirty days' time.  I
have a customer there that I have been supplying with
flour from the Red Cloud Mills, and on account of
low water they have shut down and your mill is recom-
mended to me as putting out good flour, and as I
do n't want to let them go to some other mill for their
flour, and then probably lose their trade when we can
run again, hence this order to you.  They use on an
average one car a month.  I have been selling to
them on thirty and sixty days, but will pay you for
the two cars at the expiration of thirty days.  Now if
you can fill this order do so at once.

Bill the same to S. Garber, Esbon, Kan., and send
the bill of lading and bill to me here at Red Cloud.
                    Yours truly,         S. GARBER.

In response to this letter Temple & Marshall shipped
the flour as directed, believing that they were furnish-

444 PATTERSON v. TEMPLE.

N. Dept. Opinion. McElroy, J. 5 Kan. App.

ing the flour to the Garber-Bedford Milling Company.
Samuel Garber was insolvent and had no connection
with the milling company. He wrote the letter for
the purpose of deceiving Temple & Marshall, and to
defraud them to the extent of his pretended purchase.
He did not intend to pay for the flour. Marshall, of
the firm of Temple & Marshall, went to Esbon when
the flour was shipped and made inquiry of Patterson
& Garber as to the commercial standing of the Bed-
ford-Garber Milling Company. Afterward, about the
twenty-fifth of August, Samuel Garber arrived at Esbon
and sold the flour to Patterson & Garber, collected the
money for the same, and pocketed it. Temple & Mar-
shall had no suspicion or intimation that they had been
defrauded until about thirty days, when they drew for
their money and the draft was dishonored. An in-
vestigation followed and this action was instituted.

There is but one question presented : Shall the
plaintiffs in error, or defendants in error, suffer by
reason of the frauds of Samuel Garber? In other
words, did Samuel Garber pass a good and sufficient
title to Patterson & Garber?

The case was tried by the court without a jury, and
the court made general findings in favor of the plain-
tiffs, defendants in error, and against the defendants,
plaintiff in error.

The court found that Samuel Garber wrote the let-
ter for the purpose of deceiving, cheating and defraud-
ing Temple & Marshall ; that Samuel Garber sold the
flour to Patterson & Garber at Esbon, Kan. ; that
Temple & Marshall contracted to sell the flour as they
believed, to Garber-Bedford Milling Company, not to
Samuel Garber, and that Samuel Garber was not the
agent of, nor was he in any manner connected with, the
Garber-Bedford Milling Company ; that Patterson &

Garber did not actively participate in any of the fraudulent transactions of Samuel Garber, and that they did not know of such fraudulent conduct upon the part of Samuel Garber at the time they purchased and paid for the flour. But the court finds that Patterson & Garber had sufficient suspicions and information at the time they received the flour, and at the time they paid and took a receipt therefor, to have ascertained the fraud if diligent inquiry had been made by them. The court found, as a conclusion of law, that Samuel Garber never had title to the flour in question, and that he could not, therefore, convey title to Patterson & Garber.

The claim made by plaintiffs in error is that a *bona fide* purchaser from a fraudulent vendee acquires a good title; and it is insisted that, though the sale might have been avoided as to Samuel Garber, yet, not having been avoided while the property was in Samuel Garber's possession, and Patterson & Garber having purchased in good faith, they acquired a good title. That doctrine applies only to cases of voidable sales, and not to those absolutely void. In a voidable sale the title passes subject to the right of the vendor to proceed to set the whole transaction aside on account of the fraud practiced upon him; in a void sale no title passes. Where the title passes, the fraudulent vendee may in some cases transfer a good title to a *bona fide* purchaser, but where no title passes the pretended vendee can transfer no title to a third party under any circumstances. The testimony shows that Temple & Marshall did not part with the title to the flour, and therefore Samuel Garber had no title and he could confer none.

There is another theory in the case, however, upon which the judgment, or if the sale of the flour to Sam-

446       Patterson v. Temple.

N. Dept.       Opinion.   McElroy, J.       5 Kan. App.

uel Garber was voidable only, the trial court, should be sustained. Patterson & Garber at the time they paid for the flour were in possession of sufficient information to charge them as parties to the fraud of Samuel Garber. We understand the law to be that, where parties are in possession of sufficient facts to put a reasonably prudent man upon inquiry, and such inquiry would lead to a knowledge of the fraud, that the party is chargeable with such fraud.

In *McDonald v. Gaunt* (30 Kan. 696), the court said:

"We may go further, and say that if the creditor in a case of this kind has no actual knowledge of the fraud, or notice of the fraudulent design of the debtor to transfer all his property with the direct intention of defrauding his other creditors, yet if the circumstances surrounding his purchase are such as would put a prudent man upon inquiry, which if prosecuted diligently would disclose the fraud, he cannot be deemed a *bona fide* purchaser in good faith. 'Knowledge of facts sufficient to excite the suspicions of a prudent man and put him upon inquiry, is as a general proposition, equivalent to knowledge of the ultimate fact.'"

In *Phillips v. Reitz* (16 Kan. 401), the court said:

"As to the second objection, the court distinctly charged that the vendee must be a party to the fraud to avoid the sale, and then, in another instruction, apparently in explanation of what was necessary to make him party to the fraud, charged that it was enough if he knew of the vendor's fraudulent intent, or of facts sufficient to put him upon inquiry. Is this error? We think not. Knowledge of facts sufficient to excite the suspicions of a prudent man, and put him upon inquiry, is, as a general proposition, equivalent to knowledge of the ultimate fact. And if the vendee knew of the fraudulent intent of the vendor, and bought with that knowledge, he can scarcely claim to be a *bona fide* purchaser, for he was knowingly

helping the vendor to accomplish the fraud and do the wrong."

From what we have said it follows that the court did not err in overruling the motion for a new trial. The judgment will be affirmed.