## NATHAN GOLLOBER V. GEO. W. MARTIN, *as Sheriff of Clay County.*

1. FRAUDULENT SALE; *Verdict for Creditors, Sustained.* A party purchases a stock of groceries and unsettled accounts of about $3,000 in value, from a firm of merchants who were financially embarrassed, and were being pressed by their creditors, of which facts the purchaser had knowledge. The transfer was made in considerable haste, without any inventory of the goods and accounts, or the employment of any other means to form a reasonably correct judgment of their value. The vendors and their clerk remained in the store, claiming to be employed by the vendee, and continued to sell goods and collect accounts, the vendee making only occasional visits to the store. The payment by the vendee was made by check of $2,210, upon a bank with which he was connected, and the larger part of the amount claimed to be paid was, with the knowledge of the vendee, deposited in the same bank to the credit of the wife of one member of the firm, and the sister of the other, upon individual indebtedness which the members of the firm claimed to owe. *Held,* In an action between the vendee and the creditors of the vendors, where the transfer was assailed upon the ground of fraud, that a verdict in favor of the creditors, and finding the sale to be void, is sustained by the evidence.

2. INSTRUCTION, *Not Impertinent.* A sale made under such circumstances is a departure from the usual course of business, and a badge of fraud; and an instruction that "A sale made out of the usual course of business is evidence of fraud," is not impertinent or erroneous.

3. FRAUD; *Presumptions.* The law presumes that every man intends the necessary consequences of his acts, and where the conduct of a debtor necessarily results in defrauding his creditors, he is presumed to have foreseen and intended such result.

4. FRAUDULENT INTENT, *Knowledge of, by Vendee.* Actual knowledge by a vendee of the fraudulent intent of the vendor is not essential to render the sale void. If the facts brought to his attention are such as to awaken suspicion and lead a man of ordinary prudence to make inquiry, he is chargeable with notice of the fraudulent intent, and with participation in the fraud.

*Error from Clay District Court.*

REPLEVIN, brought by *Gollober* against *Martin,* as sheriff of Clay county. Trial at the May Term, 1883, and judgment for defendant. The plaintiff brings the case to this court. The facts appear in the opinion.

*Miller & Blake,* for plaintiff in error.

*J. S. Walker,* and *Harkness & Godard,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action of replevin, brought by Nathan Gollober in the district court of Clay county, to recover a stock of goods of which he claimed ownership and right of possession through a transfer from the firm of Jackman & Robinson. The partnership of Jackman & Robinson was engaged in the grocery business in Clay Center, and becoming financially embarassed and being pressed by creditors, sold their entire stock of goods and unsettled accounts to the plaintiff, on the 9th of January, 1883. The defendant Martin, who was the sheriff of Clay county, took and was holding possession of these goods under an execution issued upon a judgment rendered against Jackman & Robinson in favor of one of their creditors. The defendant levied the execution upon the goods as the property of Jackman & Robinson, and contended that the sale to plaintiff was fraudulent and void as against the creditors of the vendors.

The principal question in the case was as to the validity of this sale. A trial was had before the court with a jury, and a verdict in favor of the defendant was returned. The court refused to set aside the verdict and grant a new trial, and the plaintiff, excepting, brings the case here for review. He makes complaint of some portions of the charge of the court, and also contends that the verdict of the jury is unsupported by the evidence. Among the instructions given was the following:

"A sale made out of the usual course of business is evidence of fraud. Whatever is notice enough to excite the attention and put a party on his guard and call for inquiry upon the part of a prudent man, is notice of everything to which inquiry would lead."

A departure from the usual course of business in the transfer of property has uniformly been held to be a suspicious circumstance, a badge of fraud, to be considered in determin-

ing the *bona fides* of the transaction. (Bump on Fraudulent
Conveyances, 51, and cases cited.) This rule is apparently
not disputed by counsel for plaintiff, but they insist that the
instruction was not pertinent, or warranted by the evidence in-
troduced before the jury.

It appears from the testimony given in the case, that before
the transfer was made, the plaintiff was apprised of the fact
that Jackman & Robinson were in failing circumstances, and
were being sorely pressed by their creditors; that within a few
hours after being so informed, he purchased the stock of goods
and a lot of unsettled accounts, without any inventory or ap-
praisement thereof, making only a superficial inspection as he
passed through the store-room and cellar where the goods were
kept. He was not engaged in merchandising, and could have
had but an imperfect notion of the value of the goods and ac-
counts. This conduct was certainly a departure from the
natural and usual course. Men do not usually buy a stock of
merchandise made up as this one was, of a great number and
variety of articles, without taking a detailed account and in-
ventory of the same; and we have no hesitation in saying that
the testimony in the case fully justified the court in the in-
struction given. The court did not assume or intimate, as
counsel seem to infer, that the sale was made in an unusual
manner, nor that the transaction between the plaintiff and
Jackman & Robinson constituted a fraud upon the creditors
of the latter. These questions were left to the jury, and while
their attention was called to the rule that certain circumstan-
ces have a tendency to show fraud, the instruction will not
bear the interpretation that such evidence or badge of fraud
was conclusive, or could not be overthrown by explanatory
proof.

The plaintiff testified that the transaction was evidenced
by a bill of sale which was in testimony before the jury. The
court, referring to this bill of sale, instructed the jury that
"the mere production of a bill of sale which would be suffi-
cient as against the seller, is not sufficient as against the cred-
itor, and he must supplement that bill of sale with proof of

good faith and payment of consideration." Under the circumstances, there was no error in giving the instruction, nor do we think there was any just cause of complaint in instructing the jury that "the law presumes that every man intends the necessary consequences of his acts, and if the act necessarily delays, hinders or defrauds his creditors, then the law presumes that it was done with fraudulent intent." One of the principal questions in the case was the intent of the debtors in making the sale charged to be fraudulent. The motives of parties in such cases are not of easy proof, and must generally be shown by their acts and declarations. Fraud is not easily detected, and in cases of this kind the law permits a resort to presumptive evidence, and imputes a fraudulent intent to a debtor where his conduct inevitably leads to a fraud upon his creditors. Where his action necessarily results in defrauding his creditors, he must be presumed to have foreseen and intended such result. Notwithstanding this instruction, the questions of the debtor's intent, and whether the sale was fraudulent, were still open for the determination of the jury, and the presumption referred to might have been rebutted by other circumstances and explanatory proof. In other portions of its charge the court told the jury "that fraud is never presumed, but must be proven; that it was the duty of the jury to take into consideration every circumstance, transaction and fact surrounding the sale." With respect to the good faith of the plaintiff, the jury was in substance told that the fraudulent intent of the vendors was not alone sufficient to avoid the sale. Actual knowledge by a vendee of the fraudulent intent of the vendor is not essential to render the sale void. If the facts brought to his attention are such as to awaken suspicion, and lead a man of ordinary prudence to make inquiry, he is chargeable with notice of the fraudulent intent, and with participation in the fraud. (*Phillips v. Reitz,* 16 Kas. 396; *Kurtz v. Miller,* 26 id. 314; *McDonald v. Gaunt,* 30 id. 693.)

It is finally urged that the verdict is contrary to the evidence. Under the facts and circumstances surrounding the sale as disclosed by the record, and applying the rule govern-

ing this court in interfering with the verdict of a jury where it has been approved by the trial court, we do not feel warranted in disturbing this verdict. There are signs of fraud connected with the sale, and considerable testimony which tends to cast a suspicion upon the *bona fides* of the transaction. It appears, as has been stated, that the plaintiff was told by Jackman on the day of the sale that his firm was in embarrassed circumstances, and for that reason were seeking to dispose of their goods. The sale was made in considerable haste, within a few hours after receiving this information, and upon a mere superficial examination of a large stock of goods and open accounts, worth several thousand dollars. The plaintiff was not a merchant, and had no training that would enable him to estimate its value; no inventory was taken, nor were there any persons skilled in the business called on to inspect the stock and accounts as to what they were worth, nor were there any other means employed by which a reasonably correct judgment could be formed of the value of the goods, which were subsequently sold for $1,872.72, nor of the unsettled accounts which amounted to between $1,700 and $1,800. The consideration alleged to have been paid was $2,210, which was paid in the form of a check upon a bank with which the plaintiff was connected. Nine hundred and eighty dollars of this amount was paid by Jackman to his wife for money which he claimed to have borrowed from her, and $380 thereof was paid by the other member of the firm to his sister to discharge an individual debt which he claimed to owe her. These payments were made at the time of the sale and with the knowledge of plaintiff. Then again, Jackman & Robinson, together with their clerk, remained in the store after the alleged sale, and continued to sell goods and collect the outstanding accounts as formerly. The plaintiff visited the store only occasionally, and never sold any of the goods nor collected any of the accounts.

These circumstancs, together with others that need not be mentioned, tend strongly to impeach the sale. Some explanation of these circumstances was made, or attempted to be made,

by the plaintiff, but the jury found against him, and against the validity of the sale. The trial judge has ratified the finding, and, under the rule heretofore referred to, we must sustain the verdict.

The judgment of the district court will be affirmed.

All the Justices concurring.