SAMUEL BAUGHMAN, *as Sheriff of Wilson County*, v. G. W. PENN.

1. FRAUD OF VENDOR; *Knowledge of Vendee.* Where the validity of a sale of property is challenged on the ground that it was made to defraud the creditors of the vendor, the mere knowledge on the part of the vendee that the vendor was largely in debt will not render the sale fraudulent, although the purpose of the vendor was to defraud his creditors, unless the vendee was a participant in the fraud.

2. PRESUMPTION; *Burden of Proof.* Fraud is never presumed, but must be established by evidence; and where the creditors of the vendor assail

the transfer for fraud, the burden of proof rests upon them to show the same.

3. ———— A court in its instructions cannot assume the existence of disputed facts and upon which the evidence is conflicting.

4. CUMULATIVE EVIDENCE; *New Trial.* The newly-discovered evidence set forth held to be cumulative and not such as would likely change the final result, and is therefore not sufficient ground for a new trial.

*Error from Wilson District Court.*

REPLEVIN by *Penn* against *Baughman,* as sheriff of Wilson county. Judgment for plaintiff, at the February Term, 1884. The defendant brings the case to this court. The opinion states the material facts.

*T. J. Hudson, B. M. Short,* and *C. G. Delano,* for plaintiff in error.

*S. S. Kirkpatrick,* and *C. C. Chase,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action of replevin, brought by G. W. Penn, to recover from the sheriff of Wilson county the possession of a small stock of goods, which the plaintiff claimed to have purchased from Howard Bros., of Fredonia, Kansas. The sheriff justified under orders of attachment that had been sued out by the creditors of Howard Bros. The sale and transfer of the goods were made about November 9, 1883. For a few months prior to the sale, Howard Bros. had been engaged in the grocery and restaurant business, and their goods, a portion of which is in controversy here, had not been paid for. Some four or five weeks after the sale of the goods to the plaintiff, several of their creditors brought suits, and caused the goods to be attached as the property of Howard Bros., claiming that the sale to Penn was invalid, and that it was made with the fraudulent purpose of defeating the creditors of Howard Bros. The cause was tried by a jury, and the verdict and judgment were in favor of the plaintiff, G. W. Penn, upholding the validity of the sale and his title and right of possession to the goods. Upon the trial it seems to have been

conceded by all that so far as the Howard Bros. were concerned the sale was made with the fraudulent design of defeating their creditors in the collection of their claims. But it is claimed by the vendee, that the purchase was made by him in good faith, without any knowledge or notice of the fraudulent purpose of the vendors. It appears that the plaintiff took immediate possession of the goods under his purchase, and that the consideration claimed to have been paid for them was fair and reasonable. The only question therefore in the court below was, whether the plaintiff was a *bona fide* purchaser in good faith of the property in controversy.

The counsel for plaintiff in error contend, and argue at some length, that the testimony shows that the vendee had knowledge of the fraudulent intent of the vendors. Upon this question there was some conflict in the testimony, but the jury by their general verdict, and also in answer to special questions, have found in favor of the good faith of Penn, and that he was not chargeable with knowledge of the fraudulent purpose which actuated Howard Bros. in making the sale. The determination of this fact was within the province of the jury, and their finding puts an end to all inquiry thereon in this court. In such a case, as has been so often stated, we cannot weigh conflicting evidence or disturb a verdict, even though the testimony seems to preponderate against it. It is but just to say, however, that after a careful reading of the testimony, which is voluminous, it appears to us to abundantly justify the verdict that has been rendered.

Some objections are made to the rulings of the court upon the instructions refused and given. These objections are somewhat general and desultory in their nature. The defendant prepared a series of six instructions, none of which were given. But the court in its general charge, which was carefully prepared, embodied most of the propositions requested by the defendant. The two remaining ones we think were improper in the case, and rightly refused. In one, the court was asked to direct the jury in effect, that the mere knowledge of Penn that Howard Bros. were indebted, was of itself sufficient to

charge him with guilty knowledge of the intention of How-
ard Bros. to defraud their creditors.   Of course, actual knowl-
edge by Penn of the fraudulent purpose of the Howard Bros.
was not necessary in order to vitiate the sale.   A "knowledge
of facts sufficient to excite the suspicions of a prudent man and
put him upon inquiry is, as a general proposition, equivalent
to a knowledge of the ultimate fact," (*Phillips v. Reitz*, 16
Kas. 396;) and this principle of law the trial court in its
charge to the jury clearly recognized and stated.   But the
mere knowledge of the purchaser that the seller is in debt,
without regard to the amount, or his ability to pay the same,
will not make void a sale, although the purpose of the vendor
was to defraud his creditors, unless the vendee was a partici-
pant in the fraud. (*Hughes v. Monty*, 24 Iowa, 499; *Atwood
v. Impson*, 20 N. J. Eq. 151; *Beals v. Gurnsey*, 8 Johns. 446;
*Durkee v. Chambers*, 57 Mo. 575; *Sisson v. Roth*, 30 Conn.
15; *Loeschigh v. Bridge*, 42 N. Y. 421; *Taylor v. Eubanks*,
3 A. K. Marsh. 239; Bump on Fraudulent Conveyances, 201,
278, and cases there cited.)

The sixth instruction requested by the defendant below,
was in part unobjectionable; but the latter portion of it assumed
as facts, matters that were in controversy between the parties,
and about which the evidence was conflicting, as that the sale
was made in great haste; that it was "a lumping trade;" and
that there was much haste in placing upon record the bill of
sale and other instruments evidencing the agreement of the
parties.   It was therefore improper.   The court, in its instruc-
tions to the jury, cannot assume as a fact that about which the
testimony is conflicting. (*Wilson v. Fuller*, 9 Kas. 176.)

Of the instructions given, complaint is made that the court
failed to call the attention of the jury and advise them of the
significance and effect of certain circumstances sought to be
proved by the plaintiff in error, and which he claimed tended
to show fraud on the part of the vendee.   We do not think
there is any just ground of complaint in this respect, as it ap-
pears to us that the instructions given, fairly cover the is-
sues and evidence of the case.   In one of the instructions

which the court gave, the theory upon which the plaintiff in error tried his case, and the circumstances upon which he relied to establish that the vendee knew, or had reason to know, of the fraud, were stated, and the jury were then informed that if they found that such was the case, the sale would be void, and the plaintiff could not recover, although he may have paid the full value of the goods.

A further objection is made to the direction given by the court, "that fraud is never presumed, but must be established by evidence." Of the correctness of this proposition, or of its application to the case, there should be no question; but counsel seem to argue that the burden of proof was upon the plaintiff, to show that he did not participate in the fraud now conceded to have been intended by the Howard Bros. Fraud is not so lightly imputed. While certain circumstances will give rise to an inference of fraud, yet the law never presumes it. It devolves on him who alleges fraud to show the same by satisfactory proof; and the burden rested upon the creditors of Howard Bros., who assailed the good faith of Penn in this transaction, to show, by either direct or circumstantial evidence, that the transaction was fraudulent as to Penn. As the trial court stated:

"The law presumes, in the absence of evidence to the contrary, that the business transactions of every man are done in good faith and for an honest purpose, and any one who alleges that such acts are done in bad faith, or for a dishonest and fraudulent purpose, takes upon himself the business of showing the same."

It is further contended that the motion for a new trial should have been granted on the ground of newly-discovered evidence. The new testimony is cumulative in character; besides, we think it is not sufficiently material to have justified the granting of a new trial. It related to the question of Penn's good faith in the transaction about which so much testimony was offered. Two witnesses, one of whom testified in the trial of the cause, state that in conversations which they had with Penn at the time the negotiations were pending between him and the How-

Baughman, *Sheriff*, v. Penn.

ards, Penn was informed that the Howards were indebted. The new testimony, which it is said will be given by the one who was a witness upon the trial, is a part of a conversation which he there testified to, and is in substance the same as the testimony which he then gave. The only material effect of his testimony, as well as that of the other witness, is to contradict the testimony given by Penn upon the trial; and looking at the whole evidence of the case, we cannot think that the new testimony would be likely to change the result already arrived at.

It is finally contended that some remarks made by counsel for plaintiff when closing the argument to the jury reflected upon the conduct of the opposite counsel, and must have influenced the jury against the defendant. It was the duty of the counsel to have called the attention of the court to the objectionable remarks at the time they were made, rather than after the trial. But in the abstract of these remarks which we find in the record, it does not appear that any wrong was intended to be charged against counsel for defendant; the reference, it seems, was to the witness Howard, whose conduct as depicted in the testimony justified severe criticism and condemnation.

We find no error in the record, and therefore affirm the judgment of the district court.

All the Justices concurring.