No. 32,696

THE EXCHANGE NATIONAL BANK OF OSBORNE, *Appellant,* v. GEORGE T. WARNE, NELLIE E. WARNE, and C. O. WARNE, *Appellees.*

(57 P. 2d 46)

Opinion filed May 9, 1936.

*A. Harry Crane,* of Topeka, *N. C. Else* and *Hubert Else,* both of Osborne, for the appellant.

*John W. Ross, D. F. Stanley* and *L. E. Weltmer,* all of Mankato, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the plaintiff bank from a judgment rendered against it refusing to set aside two deeds

which it is claimed by the bank deprived it as a creditor of one of the defendants from collecting its judgment rendered against such defendant in another case.

More than six months intervened between the rendition of the judgment in this case and the overruling of plaintiff's motion for a new trial, so that only those errors that would properly come under the ruling on the motion for a new trial are here for review.

The petition alleges want of consideration for such conveyances, and that they were executed and delivered for the purpose of cheating and defrauding the plaintiff bank.

The deeds in question were reciprocal between two brothers, conveying interests they had inherited from their parents, both of whom died intestate. The mother owned 120 acres of land in Jewell county on which the son George lived with his family prior to her death in 1919 and has ever since lived. The father owned a half section in the same county on which he and his son Clem and family lived at the time of the father's death on March 17, 1932. These two sons were the only children and therefore they each after the death of the father inherited an undivided half interest in both these tracts of land. George claimed to have made an oral agreement with his mother to purchase the 120-acre tract for $6,000 with interest at 4 percent until paid, but he had paid only $100 and the taxes and had made improvements thereon, occupying it as a homestead. He claimed to be indebted to his brother, to his father and to the plaintiff bank.

George and his wife the day after the death of the father executed, acknowledged and delivered to his brother a deed for his undivided half interest in the half section owned by their father, which deed was recorded March 24, 1932. This is the deed in particular which the plaintiff seeks to set aside, although another deed is included in the petition in the same connection, and that one is from Clem and wife, dated May 13, 1932, conveying his undivided half interest in the 120-acre tract to George.

The plaintiff bank became a creditor of George when it purchased a $3,000 note given by him to one Schneider, secured by a second mortgage on another tract of land in Jewell county on which an insurance company already had a first mortgage for $4,500. Foreclosure proceedings were commenced by the insurance company in December, 1931, in which the bank as well as George and wife were

defendants. Before any judgment was rendered an effort was made by George, Schneider and the bank to adjust this second mortgage feature by a long, three-sided lease and option contract, but it was never concluded, and on March 24, 1932, the bank filed in the foreclosure case, by leave of court, a cross petition against George and wife and they answered, but judgment of foreclosure was rendered in favor of the insurance company on March 24, 1932, and on April 14, 1932, a personal judgment was entered against George and wife in favor of the bank for $3,201.62, with interest, and such judgment was made a second lien, but the insurance company purchased the property, and the bank, before commencing this action, had execution issue, which was returned endorsed "no property found."

The defendants, George and Clem, in the case at bar answered the petition of the plaintiff bank by admitting the family relationship, the inheritance, also the foreclosure proceedings and judgment of the plaintiff bank against George, but denied all other allegations of the petition and then alleged the details as to the consideration for the two deeds, the items of indebtedness of George to Clem and to their father and a copy of the nearly consummated contract and the correspondence concerning the proposed settlement of the indebtedness of George with the bank during the month of March, 1932, when the deeds in question were both prepared and one of them was executed and delivered. To this the plaintiff filed a reply containing a general denial and a plea of estoppel as to the settlement negotiations because of judgment in the foreclosure case.

After hearing the evidence the trial court found that "plaintiff has not proven a right to have the deeds in question, or either of them, set aside, and that said deeds should not be set aside," and rendered judgment accordingly, and later overruled plaintiff's motion for a new trial.

The appellant ably argues the errors assigned under five different headings: First as to the admission of incompetent evidence tending to show an oral contract between George and his mother as to the sale and purchase of the 120-acre tract. George testified, over the objection of the plaintiff, as to the conversation between him and his mother and father, both now deceased, giving the terms of the oral agreement. Later Clem testified to substantially the same matters, saying that he did not hear the first conversation between his parents and George on this subject, but did hear a later one and related it without objection. There could certainly be no good

reason why Clem could not testify on this subject regardless of whether George was incompetent or not and the testimony of Clem was not contradicted by any one.

In the case of *McCready v. Crane*, 74 Kan. 710, 88 Pac. 748, it was held:

"A judgment rendered in a case heard without the intervention of a jury will not be reversed on account of the admission of incompetent evidence, unless the record discloses that there was no competent evidence to support it or in some other way shows affirmatively that the improper evidence affected the result." (Syl. ¶ 1.)

Appellant also calls attention to some testimony of Clem as to a conversation between him and his father about a division of the half section between him and his brother. This does not seem to be material in the issues here involved and can safely be disregarded.

The next three headings in the assignments of error can be considered together. They are that the conveyances were fraudulently made as to the plaintiff bank, were without consideration and were voluntary. Appellant urges especially that the giving of the deed by George and wife to Clem for an undivided half interest in the father's half section, the day after the death of the father, was deliberately for the purpose of fraudulently hindering and delaying the plaintiff, a creditor of George, from collecting its claim, and cites in the same connection the holding in *Hardcastle v. Hardcastle*, 131 Kan. 319, 291 Pac. 757, as to transactions between relatives being a matter that can properly be taken into consideration in determining the good faith of the transaction, and appellant insists that the same was voluntary on the part of George and that Clem was not suing George to collect an indebtedness, and cites pertinent authorities as to voluntary conveyances being more or less questionable under certain circumstances. The difficulty with this theoretically sound reasoning is in the fact that there was strong and positive evidence as to the indebtedness of George to Clem about which there was no conflict, and it was sufficient to support the finding of the trial court. And it apparently equaled the value of the land conveyed, taking into consideration the return deed from Clem to George for his half interest in the 120-acre homestead of George. On the other hand, it is shown that Clem knew of the indebtedness of George to the plaintiff bank, and it is urged he cannot accept a deed from such a party and expect it to be good by closing his eyes to an intended fraud of the grantor.

All three of these alleged errors are confronted with the time-honored rule of the right of a debtor to prefer a creditor, if he does it honestly and not in excess of his indebtedness to the preferred creditor. Accepting the general finding of the court as to the indebtedness of George to Clem as fully supported, a preference was neither fraudulent nor voluntary. It was held in *Arn v. Hoerseman*, 26 Kan. 413:

"A debtor, even when financially embarrassed, even when in failing circumstances, has a right to prefer one creditor over another, and to pay such preferred creditor, or to convey property to him in satisfaction of the debt, or to mortgage property to secure the debt; but, of course, the preferred creditor must act in good faith, and must not obtain more than is honestly and justly due him; and if he does so act in good faith, he does not become liable to any other creditor, although his act, with that of the debtor, may have the effect to wholly defeat the collection of all the other creditors' claims." (Syl. ¶ 2.)

Even when such preference is made in favor of a relative, it is sustained, as in *Bank v. Tomlinson*, 112 Kan. 274, 213 Pac. 830, where it was in favor of a wife.

Much evidence was introduced in the way of showing negotiations for a settlement with plaintiff which were partially approved before the execution of the deeds in question. This could have had a strong tendency toward convincing the trial court that no fraud was really intended, and even if it was intended by the grantor it does not usually or necessarily defeat the conveyance unless the grantee participated in such fraud. (*Baughman, Sheriff, v. Penn*, 33 Kan. 504, 6 Pac. 890.)

We find no difficulty in approving the general finding of the trial court covering these three topics as to consideration, lack of fraud and that the deeds were not merely voluntary conveyances.

The last assignment of error is that the trial court failed to recognize that the lien of the plaintiff's judgment, rendered against George in the foreclosure case on April 14, 1932, is carried back to the first day of the term by reason of the provisions of R. S. 60-3126, which would be the first Monday of March and was before the making of the deed on March 18 and before the death of the father on the 17th of March, and that the judgment thus became a lien on the land inherited. The first part of that statute does so provide, but the action on which plaintiff's judgment against George was based was not commenced until plaintiff filed its cross petition in

the foreclosure action on March 24, and the second clause of the above-cited statute makes the following exception to the general rule first stated:

". . . but judgments by confession, and judgments rendered at the same term during which the action was commenced, shall bind such lands only from the day on which such judgment was rendered."

Strictly speaking, this last feature concerns the judgment rendered rather than an error in procedure raised by a review of the hearing upon the motion for a new trial, but it is clearly not such a matter as should change the ruling of the trial court.

The judgment is affirmed.