No. 33,852

SCHREIBER MILLING AND GRAIN COMPANY, *Appellant*, v. NUTRENA
MILLS, INC., and MILLER MANAGEMENT CORPORATION, *Appellees*
and *Cross-appellants*.

(87 P. 2d 577)

Opinion filed March 4, 1939.

*A. L. Berger*, of Kansas City, *G. W. Groves, O. W. Watkins*, both of St.
Joseph, Mo., *I. N. Watson, Henry N. Ess, P. C. Groner, Paul V. Barnett* and
*C. E. Whittaker*, all of Kansas City, Mo., for the appellant.

*Blake A. Williamson, James K. Cubbison, Lee Vaughan, Jr.*, all of Kansas
City, *M. W. Borders, Sr., M. W. Borders, Jr., Dupuy G. Warrick, Cornelius
Roach, Wilfred Wimmell* and *John R. Moberly*, all of Kansas City, Mo., for
the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action upon a creditor's bill to set aside
a fraudulent conveyance. Judgment was for defendants. Plaintiff
appeals.

The petition prayed recovery by plaintiff against the Nutrena
Mills, Inc., and Miller Management Corporation for the amount of
a judgment rendered in favor of plaintiff against Nutrena Feed
Mills, Inc., in the district court of the United States for the western
district of Missouri. The petition alleged that the assets of the de-
fendant in that suit were fraudulently transferred to one defendant
in this action, and in turn fraudulently mortgaged by that defendant
to the other defendant in this action. Since this action was com-
menced the two defendants in it, Nutrena Mills, Inc., and Miller
Management Company have merged. The only company that can
be affected by the result is Nutrena Mills, Inc.

The petition alleged in substance that plaintiff had obtained a
judgment in the federal court in Missouri for $75,803.88 against
Nutrena Feed Mills, Inc., a Missouri corporation; that executions
had been issued and returned unsatisfied and that there was no prop-
erty in Missouri out of which this judgment could be satisfied; that

Nutrena Feed Mills, Inc., and its officers, directors and stockholders had caused the Nutrena Mills, a Missouri corporation, to be organized, and had conveyed all the assets and business of Nutrena Feed Mills which were not encumbered beyond their real value to Nutrena Mills, for the purpose of hindering, delaying and defrauding creditors; that by this transfer and subsequent transfers the debtor corporation, with the aid of the defendants, has stripped itself of assets out of which its judgment could be satisfied, and has rendered itself insolvent; that no adequate consideration was paid for these assets; that in furtherance of the conspiracy to defeat plaintiff's judgment Nutrena Mills had caused Miller Management Company to be organized and further hindered plaintiff's recovery. The petition alleged that plaintiff had no adequate remedy at law and prayed that the alleged fraudulent conveyances be set aside and that plaintiff's judgment be made effective against these defendants.

In their answer defendants denied any conspiracy or action on their part intended to defraud plaintiff. The answer admitted the transfer of assets alleged in the petition, but alleged in substance that they were made in good faith and that Nutrena Feed Mills was not rendered insolvent by the transfers but retained assets sufficient to satisfy plaintiff's judgment; that plaintiff had an adequate remedy at law which it had failed to exhaust; that this action could not be maintained because plaintiff had not secured a Kansas judgment; that plaintiff's action was barred by the statute of limitations and that plaintiff's cause of action was *res judicata* by reason of a garnishment proceeding in the Missouri federal court. The reply was a general denial of all new matter.

The trial court made extensive findings of fact, which will be noted later in this opinion. The judgment was in favor of the defendants. The plaintiff filed a motion to set aside the court's findings and conclusions of law that required judgment for defendants, and also filed its motion to substitute findings of fact that were submitted by the plaintiff. These motions were denied. Plaintiff argues that these motions should have been allowed.

There are many facts not disputed in the record. Nutrena Feed Mills was incorporated in Missouri in 1926. At the time with which we are concerned there were about 800 shares of stock outstanding. These shares were owned about equally by Van Roy Miller and Harry E. Fisher. The company was engaged in the business of manufacturing mixed feeds. Up to the fall of 1930 business was

good and the company prospered. Miller and Fisher decided to expand, so in November, 1930, Nutrena Feed Mills purchased a feed mill in Minneapolis, Minn., from the Schreiber Milling and Grain Company, for $100,000, $10,000 of which was paid in cash, and the balance was represented by nine promissory notes for $10,000 each. It is on account of the purchase of the mill that the action has resulted. At the time of the purchase the company owned and operated a feed mill in Wyandotte county, Kansas. It is not disputed that during most of the time with which we are concerned Miller was in active charge of the business, operating the mill in Wyandotte county owned by the company, nor is it disputed that from the fall of 1930 until the time the transactions about which complaint is made took place the business of the company did not prosper as it had in previous years. In November, 1932, a contract was entered into between Nutrena Feed Mills and Miller which terminated the business relationship between Fisher and Miller, after which Miller organized Nutrena Mills. By the terms of this agreement Nutrena Feed Mills agreed to transfer to a new corporation to be formed and owned by Miller, that is, Nutrena Mills, all the assets of Nutrena Feed Mills except those assets in Minnesota which were subject to the Schreiber indebtedness. At the time of this transfer Miller and Fisher owned the entire business, and both were directors of the old company. Fisher was chairman of the board and Miller was president of the vendor corporation. Miller owned all the stock of the new corporation, Nutrena Mills. This action revolves around this contract and the organization of the new corporation and the transfer of the assets.

The first allegation of fraud in the petition was substantially that the Nutrena Mills, Inc., was organized by Nutrena Feed Mills, Inc., and the officers, directors and stockholders thereof, pursuant to a conspiracy to defraud creditors, and all the assets of Nutrena Feed Mills, Inc., except certain assets mortgaged for their full value, were transferred to it, pursuant to said fraudulent conspiracy. With reference to this allegation the trial court made the following findings of fact:

"15. One of the allegations of fraud in the plaintiff's amended and supplemental bill is that sometime during the month of November, 1932, Nutrena Feed Mills, Inc., a corporation, and its officers, directors and stockholders, for the purpose of hindering, delaying and defrauding the creditors of Nutrena Feed Mills, Inc., including plaintiff, caused the defendant, Nutrena Mills, Inc., to be organized and chartered.

"16. The court is of the opinion that this allegation of fraud is not supported by the evidence introduced by the plaintiff; and the court finds from a consideration of all the evidence on this point that Nutrena Mills, Inc., was not organized and chartered by Nutrena Feed Mills, Inc., nor was it done for the purpose of hindering, delaying and defrauding the creditors of Nutrena Feed Mills, Inc., including the plaintiff.

"17. On the other hand, the testimony convinces the court that Nutrena Mills, Inc., was organized by Van Roy Miller only after it had become apparent to him and to Harry E. Fisher that it was impossible for them to continue together in the operation of Nutrena Feed Mills, Inc., and for the purpose of conducting the business of Nutrena Mills, Inc., separate and apart from Nutrena Feed Mills, Inc."

The first point argued by plaintiff here is that the burden of proof was on the defendants to disclose a fair and honest course of dealing not prejudicial to the rights of creditors, since the original debtor and its officers, in dealing with the defendants, were dealing with themselves. In connection with this argument it is pointed out that the usual rule about the burden of proof being on the plaintiff is not in point here, because the purchaser whose purchases are sought to be set aside was the president, a director, a managing officer and the owner of one-half of the capital stock of the vendor corporation. It is difficult to see how that rule is in point here. The trial court, in the finding already quoted, found specifically on this point. It should be noted that the court did not say that the plaintiff had failed to establish fraud. It found positively that Nutrena Mills was not organized by Nutrena Feed Mills and that it was not done for the purpose of defrauding creditors. There is evidence on both sides of this question, as well as that covered by the next quoted finding. There was ample evidence, if the trial court believed it, which it had a right to do, that Miller and Fisher dealt with each other at arm's length at all times, and that this was the best sort of a contract that Nutrena Feed Mills could make. In the face of such a finding on conflicting evidence this court will not weigh the evidence with the idea of reaching a different conclusion. There are many authorities on this point, but in *Farney v. Hauser,* 109 Kan. 75, 198 Pac. 178, this court said:

"But it is said that this finding was greatly against the weight of the evidence, and that as this is an equity case we should decide this question of fact for ourselves. Unless the evidence is documentary (*Mathewson v. Campbell,* 91 Kan. 625, 627, 138 Pac. 637), or by deposition (*Record v. Ellis,* 97 Kan. 754, 760, 156 Pac. 712), that is not done and cannot be done by this court, whether the case be one at law or in equity. (*Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057.)" (p. 83.)

Plaintiff makes out a strong case that the circumstances support his position. The fact remains, however, that there was some substantial evidence to support the defendants' position and the findings of the trial court. We will not disturb those findings.

The next allegation of fraud alleged in the petition is that the transfers rendered Nutrena Feed Mills, Inc., wholly insolvent and without property to satisfy any of its creditors. On this point the court made the following findings of fact:

"31. Another allegation of fraud contained in the plaintiff's amended and supplemental bill is that by the transfer of the properties in question Nutrena Feed Mills, Inc., was rendered wholly insolvent, and wholly without property or means with which to satisfy its creditors, or any of them, and wholly without any assets which could be taken on execution for the satisfaction of its creditors or any of them.

"39. The court is of the opinion that the testimony conclusively shows that the transfer from Nutrena Feed Mills, Inc., to Nutrena Mills, Inc., did not render Nutrena Feed Mills, Inc., wholly insolvent and without property or means with which to satisfy its creditors, or any of them, and wholly without any assets which could be taken on execution for the satisfaction of its creditors, or any of them; but, on the contrary, the testimony conclusively shows that immediately after the transfer Nutrena Feed Mills, Inc., had assets in at least the sum of $11,100 in excess of its liabilities."

It will be noted that this is a positive finding against the contention of the plaintiff. There was a great deal of evidence on this point. Both parties introduced calculations to sustain their position. The trial court had a better opportunity than we have to examine these calculations and to question the witnesses who were responsible for them. There was oral testimony on the point as well. The plaintiff asks us to examine all this evidence and to reach a conclusion different from that reached by the trial court. We cannot do that.

The next ground of fraud alleged in the petition was that Nutrena Mills, Inc., did not pay any adequate or bona fide consideration for the assets, but received them with intent to hinder, delay and defraud the creditors of the grantor. On this point the trial court made the following finding:

"The court is of the opinion that the transfer of the Kansas City properties in question was made by Nutrena Feed Mills, Inc., to Nutrena Mills, Inc., for an adequate and bona fide consideration, and that Nutrena Mills, Inc., was not incorporated for the purpose of hindering, delaying and defrauding the creditors of Nutrena Feed Mills, Inc., and that Nutrena Mills, Inc., paid an adequate and valid consideration for all of the capital assets received from Nutrena Feed Mills, Inc."

As to this finding, plaintiff urges many circumstances tending to prove the opposite. We cannot say here on appeal that the trial court did not consider these circumstances. Certainly there was some testimony on the other side. The trial court was charged with the duty of weighing this evidence. We shall not disturb the conclusion reached.

We have already touched on the argument of plaintiff that the burden of proof was on defendants on account of the relationship of the parties.

Plaintiff next argues that unfavorable inferences arose against the defendants by reason of their suppression of evidence, their failure to produce evidence and a failure to testify. On this point plaintiff maintains that books and records of the company with reference to the Kansas business were kept away from it so that it could not produce these books at the trial and could not produce figures from them. On this contention the trial court made the following finding:

"Plaintiff claims that the defendants suppressed evidence and sought to render it impossible for the plaintiff to secure relevant and necessary testimony and evidence, particularly the books and records of Nutrena Feed Mills, Inc., prior to November of 1932. The court is of the opinion that the evidence does not disclose any suppression of evidence on the part of the defendants, or either of them. The court is further of the opinion that the evidence does not disclose any attempt on the part of defendants, or either of them, to prevent the plaintiff from securing any testimony relevant or pertinent to the issues of the case. Shortly after the sale of the Kansas City plant to Nutrena Mills, Inc., in November, 1932, the books and records of Nutrena Feed Mills, Inc., prior to such sale were delivered to a storage company in Kansas City, Mo., at the request of Harry E. Fisher. At the instigation of the plaintiff in this case, a receiver was appointed for the said Nutrena Feed Mills, Inc., by the circuit court of Jackson county, Missouri. The said receiver had possession of the assets of the said company, including the said books and records, and the evidence shows that plaintiff's attorneys were advised, through depositions of the existence and location of such books and records. Such books and records were available to plaintiff and its counsel for a long period of time prior to the trial of this case."

This finding is supported by the evidence. Furthermore, should it be true that the acts of defendants raised presumptions against it, these presumptions were met, as witness the findings of the trial court. On this question this court said, in *Baughman, Sheriff, v. Penn,* 33 Kan. 504, 6 Pac. 890:

"While certain circumstances will give rise to an inference of fraud, yet the law never presumes it. It devolves on him who alleges the fraud to show the same by satisfactory proof; and the burden rested upon the creditors of

Howard Bros., who assailed the good faith of Penn in this transaction, to show, by either direct or circumstantial evidence, that the transaction was fraudulent as to Penn. As the trial court stated:

"'The law presumes, in the absence of evidence to the contrary, that the business transactions of every man are done in good faith and for an honest purpose, and anyone who alleges that such acts are done in bad faith, or for a dishonest and fraudulent purpose, takes upon himself the business of showing the same.'" (p. 508.)

Plaintiff next argues that there are certain badges of fraud in the record which compel a finding of fact against the defendants. "Badges of fraud" is defined as meaning those signs or indicia from which its existence may be inferred as a matter of law. Many of those badges are pointed out in this record. This is but another way of raising the question with which we have already dealt. While these badges might give rise to an inference of fraud, this inference would be subject to explanation and contradiction by other circumstances and by oral testimony. A badge of fraud is but little more than a suspicious circumstance. All these were considered by the trial court. Furthermore, the existence of some of the badges of fraud upon which plaintiff relies is disproved by the findings of the trial court.

We have examined the further arguments made by the plaintiff and have read an abstract of some 850 pages carefully. We have concluded that the record presents only questions of fact upon which counsel have made a vigorous and brilliant argument. We cannot, however, find a single finding of fact that is not sustained by substantial, competent evidence. These findings compel a judgment for defendant. Certain conclusions of law on questions raised by defendants in their answer were made in favor of the plaintiff. From these defendants took a cross-appeal, but on account of the conclusion we have reached it will not be necessary to deal with them.

The judgment of the trial court is affirmed.