No. 46,439

James K. Polk, *Plaintiff and Appellant*, v. Frank M. Polk and Margaret B. Polk, *Defendant*, and Dwayne Little, *Garnishee and Appellee*.

(499 P. 2d 1142)

Opinion filed July 19, 1972.

*David C. All*, of the firm of Gaines and All, of Augusta, argued the cause and was on the brief for the appellant.

*L. J. Bond*, of the firm of Bond and Bond, of El Dorado, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: The question presented on this appeal is whether the sale and assignment of a contract for the purchase of real

estate was void as having been made to defraud creditors. This issue was tried out in the court below in garnishment proceedings, and no question is raised concerning the propriety or regularity of these proceedings. The trial court upheld the validity of the assignment and an appeal has been taken by the plaintiff-garnishor, James K. Polk.

For the sake of clarity we shall refer to the garnishor as plaintiff or James, and the garnishee, Dwayne Little, either as Little, or Dwayne. Frank M. Polk, the defendant in the original action and the present judgment debtor, will be called Frank.

Highly summarized the record reveals that James K. Polk and Frank M. Polk are brothers between whom the bonds of brotherly love and affection had become somewhat strained. On October 17, 1966, James filed an action against brother Frank and Margaret, his wife, to recover some $18,000. This lawsuit apparently stemmed from the sale of a Ford agency at Burden, Kansas. The action was eventually tried, and resulted in a judgment against Frank for $17,000, plus considerable interest.

Dwayne Little, the garnishee, is a brother-in-law of the Polk brothers, having married their sister. During the 1966 Thanksgiving season Mr. Little, accompanied by his wife, took his mother to Arizona where she was going to stay. On this trip the Littles visited in the home of the Frank Polks, who had moved to Arizona from their former home in Douglas, Kansas. At one time during the visitation, and following a telephone conversation between Frank and some unknown person, Frank told Dwayne that he wanted to sell a contract which he held on his Douglas home— that Douglas was about 1200 miles away and the contract was hard for him to sell where he was.

Mr. Little inquired what Frank wanted for the contract, which at the time carried an unpaid balance of approximately $7200, and Frank replied he would sell it for $3500. Little then said that if he could have a week after he got home he would see if he could raise the money, and if so, he would take the contract. On arriving home Mr. Little was able to borrow the money from his bank by giving a mortgage on his own home, and on December 5, 1966, he sent Frank a check for $3500. Frank's assignment of the contract to Dwayne was recorded on December 12, 1966.

The contract itself is not set out in the record, but the files of the bank in which it was escrowed show that it bore 5¾% interest

and was payable in monthly amounts of some $52, each payment to be applied first on interest and the remainder on the unpaid principal. The last payment is shown to become due on April 1, 1986.

As we have previously said, James K. Polk recovered judgment against Frank in November, 1969. In the month of June, 1970, garnishment proceedings were initiated by James in which the issue ultimately became whether Frank's assignment of the real estate contract to Dwayne was valid or whether it was void as a fraudulent conveyance. The trial court found the contract to be valid and entered judgment in Little's favor on the following findings:

". . . the Court, after considering the briefs filed and the evidence offered, finds that the garnishee had no knowledge that the defendants Frank M. Polk and Margaret B. Polk committed fraud in their assignment of the real estate contract referred to in the pleadings to Dwayne Little.

"The Court further finds that there was no attempt on the part of either of the defendants or the garnishee to defraud the plaintiff in any manner and the Court finds that the garnishee is not in any manner liable to the plaintiff on his answer in garnishment."

The single point raised by the plaintiff on appeal is phrased in this fashion:

"The court erred in finding no fraudulent conveyance in a transaction wherein defendants Frank M. Polk and Margaret B. Polk conveyed a certain tract of real property and assigned an agreement for a Warranty Deed to Duane [sic] Little."

It is the plaintiff's position, as we understand his argument, that the evidence of record presents a classic example of a fraudulent conveyance in that six so-called badges or indicia of fraud have been established, which in their total impact, constitute a prima facie case of fraud—and that this prima facie showing has not been rebutted.

There is little disagreement between the parties as to the legal principles applicable to fraudulent conveyances. In his brief the plaintiff contends that the elements of a fraudulent conveyance are first, an intent on the part of the grantor to hinder, delay or defraud his creditors and second, participation by the grantee in the fraudulent scheme or such knowledge of facts and circumstances by the grantee as would impute knowledge of the fraud to him. In general, this appears to be a fair statement of prevailing law. (*McDonald v. Gaunt*, 30 Kan. 693, 2 Pac. 871; *Gollober v. Martin*,

*Sheriff,* 33 Kan. 252, 6 Pac. 267; 37 Am. Jur. 2d, Fraudulent Conveyances, § 6-9, pp. 694-701.)

Continuing, the plaintiff calls attention to evidence which he maintains establishes six badges or indicia of fraud which he asserts are generally recognized: (1) a relationship between grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures.

Prior decisions of this court have accorded general recognition to the badges or indicia of fraud which are mentioned and one or more of them have been applied in this jurisdiction in certain specific situations. (*Gollober v. Martin, Sheriff,* supra; *McDonald v. Gaunt,* supra; *Gish v. Unruh,* 160 Kan. 757, 165 P. 2d 417; *Stephenson v. Wilson,* 147 Kan. 261, 76 P. 2d 810; *Vickers v. Buck,* 60 Kan. 598, 57 Pac. 517; *Cox v. Cox,* 39 Kan. 121, 17 Pac. 847.)

On the other hand, our decisions have recognized that whether a conveyance is or is not fraudulent as to creditors is largely a question of fact. (*Houska v. Lake,* 148 Kan. 229, 80 P. 2d 1102; *Bank of Inman v. Graves,* 148 Kan. 468, 83 P. 2d 666.) That being so, our ancient rule must be applied in this case, namely, that where findings made by the trial court are supported by substantial competent evidence, they are to be upheld on appeal. (See cases in 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 507.)

Before taking a look at the evidence we should point out that the testimony consisted entirely of that given by the plaintiff himself, and that given by Dwayne Little, whom the plaintiff called as his own witness. Only Mr. Little's testimony has been included in the record, and we must advert to it alone, in conjunction with the surrounding circumstances, in determining whether the findings of the trial court, on which judgment was entered in favor of Dwayne, can be sustained.

It will not be necessary to enter into an extended or detailed discussion of Dwayne Little's testimony, but a few portions require brief comment. First, it should be noted that Mr. Little testified he bought the contract because he thought it was a good investment; that he paid $3500 for the contract and mortgaged his own home to raise the purchase price; that he had just finished paying off the

mortgage at the time of trial (December, 1970) and had not, at that point, recouped his $3500 investment. Although Little had heard of James' lawsuit against Frank and the amount of damages claimed, he testified he knew nothing about their fraternal troubles or their business relationships and had never inquired into them— that they were none of his business and he didn't poke into other people's affairs. He testified positively that he had made no arrangements to pay Frank any of the money he received under the contract and that he was in no way obligated to do so.

We discern little in the record on which to base the plaintiff's claim that Frank was insolvent. Certainly Dwayne did not testify to that effect; he merely testified that Frank said he needed the money—without defining the need. Nor does the record bear out the statement that Frank, to Dwayne's knowledge, had removed all his assets from this state and had placed them beyond the reach of Kansas process.

As to the manner in which the sale was transacted, it is true Dwayne testified he did not inspect the house at that particular time. However, both he and his wife were familiar with the property, having visited the Polk family during 1965 while Frank was living there, and Dwayne, who had lived in that vicinity all his life, was doubtless familiar with its value on the local market.

The burden of establishing a fraudulent conveyance lies with the party asserting it. (*Cox v. Cox,* supra.) The plaintiff appears not to dispute this rule but he maintains that a prima facie case of fraud has been made through the cumulative effect of the several badges of fraud which he maintains have fairly been established. But even though it be assumed that an inference of fraud could be drawn from the circumstances which surrounded the transaction in question, the inference would be subject to refutation and rebuttal. It was said in *Baughman, Sheriff, v. Penn,* 33 Kan. 504, 6 Pac. 890, that while certain circumstances may give rise to an inference of fraud, the law never presumes it, and that any person who alleges that acts have been committed in bad faith and for a fraudulent purpose takes upon himself the burden of proving his allegations. This question was treated in *Schreiber Milling Co. v. Nutrena Mills, Inc.,* 149 Kan. 276, 87 P. 2d 577, where the court said:

"Plaintiff next argues that there are certain badges of fraud in the record which compel a finding of fact against the defendants. 'Badges of fraud' is defined as meaning those signs or indicia from which its existence may be inferred as a matter of law. Many of those badges are pointed out in this

record. This is but another way of raising the question with which we have already dealt. While these badges might give rise to an inference of fraud, this inference would be subject to explanation and contradiction by other circumstances and by oral testimony. A badge of fraud is but little more than a suspicious circumstance. . . ." (p. 282.)

We could not say the trial court was unjustified in concluding that fraud was not established on Little's part. The court was in a position, which we are not, to observe the manner and demeanor of Mr. Little while on the stand, during which time he was subjected to searching cross-examination. The court could thus evaluate the quality of his testimony; it had the opportunity to assess his credibility under oath, and to weigh the evidence he gave in the light of all the surrounding circumstances which bore upon the question of intent. In pondering the adequacy of consideration, the court might have taken into account, among other matters, the fact that interest had to be paid on Dwayne's mortgage to the bank, as well as the length of time that Dwayne would be out of the use of his money and the possibility that default could occur in payments due under the contract (although they have since been made like clock work) which might entail lengthy and expensive litigation. Overall it might be said that some of the assumptions which the plaintiff has seen fit to draw from Little's testimony will bear close scrutiny, for it appears to us that more than one inference might reasonably have been drawn from certain segments of the evidence.

The real underlying question in this case concerns the *bona fides* of the transaction had between Frank M. Polk and Dwayne Little. This was a question to be determined by the trial court. (*First Nat'l Bank v. Cottingim*, 145 Kan. 330, 65 P. 2d 293.) The trial court found, in effect, there was no fraudulent intent on Little's part in entering the transaction and no attempt on the part of either assignor or assignee to defraud the plaintiff. We deem the findings to have sufficient substantial support in the evidence to require affirmance of the judgment entered by the trial court, and it is so ordered.