**In re Francis Frederick KENNEDY and Betty Lou Kennedy, Debtors.**

**Joseph I. WITTMAN, Plaintiff,**

**v.**

**Howard Frederick HENRY, David K. Henry, Susan Jane Henry, Keith Henry, and Lauren Henry, Defendants.**

**BAP No. 87–4330–S.**
**Bankruptcy No. 86–40360.**
**Adv. No. 86–0232.**

United States District Court,
D. Kansas.

Aug. 16, 1990.

Donald E. Bucher, Scott B. Haines, Kansas City, Mo., for plaintiff.

Joseph I. Wittman, Topeka, Kan., trustee.

Winton A. Winter, Jr., Stevens, Brand, Lungstrom, Golden & Winter, John M. Solbach, Lawrence, Kan., Anne L. Baker, Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on appeal from a November 17, 1987 memorandum decision of the bankruptcy court sustaining defendants/appellees' motion for a directed verdict in a fraudulent conveyance action brought by the appellant, Joseph I. Wittman, who served as trustee in the bankruptcy of Francis and Betty Lou Kennedy. On December 14, 1987, the bankruptcy court denied the trustee's motion to alter or amend the November 17, 1987 order. The specific issue presented in this appeal is whether grantee participation in, or knowledge (actual or constructive) of, the grantor's intent to defraud creditors is a necessary element of a prima facie case in a action to set aside a conveyance of real property as fraudulent under K.S.A. 33–102.

This court finds that it has jurisdiction over this appeal under 28 U.S.C. § 158. The standards of review which this court must employ in this appeal are well-settled. In an appeal from a bankruptcy court decision, the district court functions as an appellate court and is authorized to affirm, reverse, or modify the bankruptcy court's ruling or to remand the case for further proceedings. Fed.R.Bankr.P. 8013. The district court may examine the bankruptcy court's conclusions of law *de novo*. *In re Mullet*, 817 F.2d 677, 679 (10th Cir.1987). The bankruptcy court's findings of fact must be upheld unless they are clearly erroneous. *Id.* at 678.

The facts underlying this appeal may be briefly summarized as follows. The appellees, Howard Frederick Henry (Rick), David K. Henry (David), Susan Jane Henry (Susan), and Keith and Lauren Henry (hereafter collectively referred to as "the Henrys") are the sons, daughter-in-law, and grandchildren of Betty Lou Henry Kennedy and step-relatives of Francis Kennedy. The Henry family owns and operates farm ground of approximately 300 acres near Big Springs, Kansas. As a result of inheritance, Betty Lou Henry Kennedy received a less than 20% interest in the 300–acre farm; the remaining 80% interest was divided among Bob, Rick and David Henry, Betty Lou's children from her marriage to Jack Henry (hereafter, "the Henry boys").

In 1970, several years after the death of her husband Jack, Betty Lou married Francis Kennedy. At trial, evidence was presented to the effect that Betty Lou and Francis Kennedy promised the Henry boys that Betty Lou's 20% fractional interest in the farm belonged to them and that she would convey it to them. There was also evidence that Betty Lou and Francis Kennedy made an agreement with the Henry boys that Francis and Betty Lou could operate the farm, rent-free and without any payment to the Henry boys. In return, Francis and Betty Lou agreed to pay taxes on and maintain the farm and to execute deeds and transfer Betty Lou's fractional 20% interest in the farm to the Henry boys.

There was also evidence that in 1970 the Henry boys and their grandmother, Mae Henry, transferred their respective interests in an adjoining 10–acre tract to the Kennedys for purposes of building a home for Francis and Betty Lou on the site. Francis and Betty Lou Kennedy operated the farm and kept all of the farm income from the early 1970s through 1986. From time to time, Mr. Kennedy received operating loans from Lawrence National Bank ("Bank"). When one of the Henry boys, Bob Henry, died in June 1982, his fractional interest in the farm passed to his wife, Susan J. Henry and their two children, Lauren and Keith.

At trial, evidence was presented that on October 5, 1984 (approximately one and one-half years before the Kennedys filed for bankruptcy), Betty Lou contacted her long-time family attorney, Byron Springer, of the Lawrence, Kansas firm of Barber, Emerson, Six, Springer and Zinn. Betty Lou requested that Springer draft separate deeds which would convey her 20% interest in the farm to the Henry boys, purportedly in accordance with the 1970 agreement. On October 19, 1984, Springer informed Betty Lou that the deeds were ready for signature. Betty Lou, however, had by then decided to alter the distribution of her interest in the property to include her daughter-in-law, Bob's widow, Susan, in the distribution. The deeds were accordingly redrafted, signed, notarized and filed with the Register of Deeds of Douglas County, Kansas on January 7, 1985, prior to the Kennedys' departure on a trip to California.

The Kennedys filed a voluntary petition in bankruptcy on March 18, 1986, approximately 14 months after the filing of the deeds for the conveyance to the Henrys. On December 15, 1986, the Kennedys' Trustee in Bankruptcy (appellant herein) filed a complaint against appellees herein, the Henrys, seeking to set aside as fraudulent the conveyance of the Kennedys' interest in the farm property to the Henrys, pursuant to 11 U.S.C. § 544. On November 9, 1987, the trustee's complaint was tried to the bankruptcy court.

At trial, the trustee offered the following evidence in support of his contention that the conveyance of the Kennedy's interest in the farm property to the Henrys should be set aside as fraudulent. Prior to the conveyance of the Kennedy's interest in the farm, the Kennedy's April 1984 financial statement reflected ownership of a 300–acre farm valued at $180,000. In July 1984, Francis Kennedy met with a loan officer at Lawrence National Bank ("Bank"), where the Kennedys' debt equalled $82,298.17, and in the course of that meeting, the loan officer advised Mr. Kennedy that the interest on that note would no longer be "rolled into" or recapitalized as it had been since 1981. Thus, unless the 1984 harvest proceeds were sufficient to pay the interest on the loan, the loan would be called due and payable. The Bank loan officer assisted Mr. Kennedy in applying for an FHA guaranteed loan, relying on the Kennedys' ownership of the 300–acre farm. Francis Kennedy met with the Bank loan officer on January 7 and January 16, 1985, January 7 being the same date as the deed conveying the Kennedys' fractional interest in the farm was recorded. At the meetings, the Bank stated that it was not calling the $82,000.00 note at that time, relying primarily on the pendency of the FHA loan application which in turn relied upon Mr. Kennedy's continued ownership of the 300–acre farm. Mr. Kennedy did not disclose to the Bank at the January 7, 1985 meeting that the conveyance was taking place.

At the conclusion of the trustee/appellant's evidence, the defendants/transferees, the Henrys, moved for a directed verdict. In a memorandum decision dated November 17, 1987, the bankruptcy court sustained the Henrys' motion; on December 14, 1987, the court denied the trustee's subsequent motion to alter or amend the November 17, 1987 order. In sustaining the Henrys' motion for directed verdict, the bankruptcy court found that the transferees, the Henrys, had no knowledge of the preparation, execution or recording of the deeds conveying the Kennedys' interest in the property to them until after the transfer was accomplished. The court also

found that plaintiff trustee had not proven either that the Kennedys were insolvent at the time of the transfer or that any litigation was pending against the Kennedys at the time of the transfer. The court found that the transfer was accomplished in accordance with normal business procedures. The court also found that there was no evidence that the Henrys believed that the interest conveyed to them was the Kennedys' last asset subject to Kansas execution; at the trial, it was argued that the interest could have been exempted as homestead under Kansas law. Thus, the court found that the evidence presented in plaintiff trustee's case-in-chief established only that the grantees were related to the grantors, and did not establish any of the other five traditional "badges of fraud" in connection with the transfer.

In its November 17, 1987 order sustaining the defendants' motion for directed verdict, the bankruptcy court found that a directed verdict for the Henrys was proper because the plaintiff trustee had failed to establish the second element of its prima facie case under K.S.A. 33–102. Specifically, the court found that plaintiff trustee "failed to establish participation of the grantee in any fraud, or knowledge on the grantee's part of facts and circumstances as would impart knowledge of fraud to them," citing *Koch Engineering Co. v. Faulconer*, 239 Kan. 101, 105, 716 P.2d 180 (1986) (quoting *Credit Union of America v. Myers*, 234 Kan. 773, 778, 676 P.2d 99 (1984)). The court further found that "no facts showing any actual knowledge on the part of the grantees were presented and that fraud as a matter of law had not been developed through the facts."

The bankruptcy court reaffirmed its holding that grantee participation is a necessary element of a fraudulent conveyance action under K.S.A. 33–102 in its December 14, 1987 order denying plaintiff's motion to alter or amend the previous judgment. In that order, the bankruptcy court found that the Kansas Supreme Court in *Koch* interpreted K.S.A. 33–102 to require two elements: grantor intent to defraud creditors *and* grantee participation in the fraudulent scheme "or such knowledge on the latter's

part of facts and circumstances as would import knowledge of the fraud to him." *Koch*, 239 Kan. at 105, 716 P.2d 180 (quoting *Credit Union of America v. Myers*, 234 Kan. 773, 778, 676 P.2d 99 (1984)).

In this appeal, the appellant/trustee contends that grantee participation in, or knowledge of, the grantor's intent to defraud creditors is not a necessary element of a fraudulent conveyance action under K.S.A. 33–102. Appellant's argument is based on two primary sources: (1) the language of the statute, and (2) early Kansas case law. The Kansas version of the Uniform Fraudulent Conveyances Act, K.S.A. 33–102, in relevant part states:

> 33–102. *Transfers to delay or defraud creditors or purchasers.* Every gift, grant or conveyance of lands ... made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages ... shall be deemed utterly void and of no effect.

Appellant argues that the statute's use of the phrase "made *or* obtained" mandates a conclusion that fraudulent intent on the part of either the grantor or the grantee is sufficient to void a conveyance as fraudulent under K.S.A. 33–102. Appellant also relies on early case law interpreting the Kansas statute as making grantee intent irrelevant to the question of whether a conveyance is voidable as fraudulent, with transfers without consideration being deemed "fraud in law." *Hardware Co. v. Semke*, 105 Kan. 628, 630, 185 P. 732 (1919); *see Security Benefit Ass'n v. Swartz*, 146 Kan. 267, 70 P.2d 16 (1937); *A.H. Jennings & Sons Tire & Accessory Co. v. Farmer*, 127 Kan. 164, 272 P. 167 (1928).

As an initial matter, the court notes, as did the bankruptcy court, that the Kansas fraudulent conveyance statute does not, by its terms, require grantee participation in, or knowledge of, the grantor's fraud as an essential element of a fraudulent conveyance action. Rather, the statute broadly refers to "transfers to delay or defraud creditors or purchasers" and further states that "every gift, grant or conveyance of lands ... made or obtained with intent to

hinder, delay or defraud creditors ... shall be deemed utterly void and of no effect." Thus, the language of the statute only requires fraudulent intent on the part of the grantor or the grantee, but not both.

As, however, stated by the bankruptcy court, in recent cases the Kansas Supreme Court has stated the following rule:

> [I]n general, the elements which comprise a fraudulent conveyance are first, an intent on the part of the grantor to hinder, delay or defraud his creditors **and second, the participation of the grantee in such fraudulent's scheme or such knowledge on the latter's part of facts and circumstances as would import knowledge of fraud to him.**

*Koch Engineering Co. v. Faulconer,* 239 Kan. 101, 716 P.2d 180 (1986) (quoting *Credit Union of America v. Myers,* 234 Kan. 773, 778, 676 P.2d 99 (1984)) (emphasis added). The rule requiring both grantor and grantee intent as elements of a fraudulent conveyance action stated in *Koch* (quoting *Credit Union*) appears to have been originally derived from the plaintiff's brief in *Polk v. Polk,* 210 Kan. 107, 499 P.2d 1142, 1145 (1972), and adopted by the *Polk* Court as "[i]n general, a fair statement of prevailing law." *Id.* (citing *McDonald v. Gaunt,* 30 Kan. 693, 2 P. 871 (1883); *Gollober v. Martin, Sheriff,* 33 Kan. 252, 6 P. 267 (1885); 37 Am.Jur.2d, Fraudulent Conveyances §§ 6–9, 694–701).

The *Polk* requirement of proof of grantee intent or knowledge of the grantor's fraud as an element of a prima facie case under K.S.A. 33–102 can be interpreted as applying only in cases where consideration exists for the transfer. Thus, the *amicus curiae* in this case, the Kansas Bankers' Association, urges this court to clearly state a distinction which, although not expressly stated by the Kansas Supreme Court, is, they argue, implicit in the Kansas case law; the urged distinction is between donee transferees, whose intent and knowledge are immaterial since transfers without consideration may be deemed "fraud in law," and bona fide or purchaser/vendee transferees who have paid consideration for the transfer, whose fraudulent intent or

knowledge (actual or constructive) of the grantor's fraud must be proven to set aside a transfer as fraudulent under K.S.A. 33–102.

This court finds persuasive appellant's argument that, where a transfer is without consideration, grantee intent or knowledge of fraud should not be a required element of a prima facie case under K.S.A. 33–102. This court also believes that, when presented with the proper case, the Kansas Supreme Court might well repudiate its previous statement of the elements of a fraudulent conveyance action as requiring grantee intent and knowledge in cases in which no consideration is paid.

This court will not, however, overrule the bankruptcy court's conclusion of law which required grantee intent or knowledge for two reasons. First, under the so-called "Erie Doctrine," decisions of a state's highest court constitute part of the "laws of the several states" which, under the Rules of Decision Act (now 28 U.S.C. § 1652), federal courts are required to regard as binding rules of decision in cases in which they apply. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Commissioner v. Bosch's Estate,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (applying the Erie Doctrine to cases in which jurisdiction is premised upon the existence of a federal question). Notwithstanding the fact that the Kansas Supreme Court did not appear to be directly faced with the present issue regarding grantee intent in its recent cases, this court is not prepared to dismiss as dicta the Kansas Supreme Court's clear, albeit general, statements of the elements of a fraudulent conveyance action.

Second, there is evidence in the record to support a finding of consideration for the Kennedys' transfer to the Henrys. The bankruptcy court found that the non-payment of rent alone by the Kennedys could be consideration for the Kennedys' transfer of their fractional interest in the property. Thus, notwithstanding the nominal consideration of "$1.00 and love and affection" recited in the deed, the Henrys could arguably qualify as bona fide transferees whose

fraudulent intent or knowledge of the grantors' fraudulent intent must be proven in any event under Kansas law.

Given that this court does not find the bankruptcy court's statement of the applicable law in Kansas concerning the elements of a fraudulent conveyance action to have been in error and that the bankruptcy court's factual findings have not been shown to be clearly erroneous, the court finds no basis for reversing the bankruptcy court's order sustaining defendants/appellees' motion for a directed verdict.

IT IS BY THE COURT THEREFORE ORDERED that the decision of the bankruptcy court is AFFIRMED.